**TEXAS & N. O. R. CO. v. GRACE et al.**

No. 4249.

Court of Civil Appeals of Texas.

Dec. 7, 1944.

Rehearing Denied Jan. 10, 1945.

220

Woodul, Arterbury & Folk, of Houston, for appellant.

Ernest Coker and Campbell & Foreman, all of Livingston, for appellees.

MURRAY, Justice.

On April 15, 1943, Josh Grace was killed by a freight train of the appellant, Texas & New Orleans Railroad Company, in the town of Livingston. The deceased had been drinking intoxicants during the day and was sitting on the railroad track on the end of a tie, with his back to the rail, with his head on his hands, at a place where the railroad track goes through Livingston, between two main thoroughfares of that town. The train consisted of 46 loaded cars and a caboose and an engine. The railroad track at that point is on a considerable upgrade and curves slightly to the west as the track proceeds from south to north. The train was travelling in a northeasterly direction. He was sitting on the west side of the track and because of the curve in the railroad track his position was visible only to the fireman sitting on the left-hand side of the engine. The engineer on the right-hand side could not see him. The portion of the track where the accident occurred was a sort of alleyway between a group of business houses and had been frequently used by pedestrians, which fact was known to the train operators. The train was running at a speed of 18 or 20 miles per hour and its bell was ringing and its whistle was blowing immediately before Grace was struck and killed. The accident occurred about 4:20 in the afternoon. The appellees, Daisy Grace et al., brought suit in the district court of Polk County, Texas, as the surviving wife and children and dependent mother of the deceased. They pleaded various acts of negligence of the operators of appellant's train and also pleaded the issue of discovered peril. The case was submitted to the jury solely on the issue of discovered peril and upon a verdict of the jury judgment was entered against the appellant railroad company for a total sum

of $26,000 apportioned as follows: Daisy Grace, surviving wife, $10,000; Jacqueline Grace, George Henry Grace and James Bennett Grace, surviving children, $5,000 each; Mrs. Pauline Alley, a married daughter, nothing; Mrs. Tinnie Grace, surviving mother, $1,000. The railroad company has duly perfected its appeal.

The appellant complains in its first point that there is no evidence in the record to justify the submission of the issue of discovered peril and that the trial court should have instructed a verdict for the defendant. In the second point, it complains of the action of the court in submitting to the jury special issues Nos. 1 and 2, contending that such matters were not in dispute and that it was error to submit such issues. Special Issue No. 1 inquired of the jury whether the deceased was in a situation of peril immediately before he was struck and special issue No. 2 inquired whether the fireman discovered and realized the perilous position of the deceased. In its third, fourth, fifth, sixth and ninth points, appellant complains of submitting to the jury special issues involving the issue of discovered peril. In its seventh point, the appellant complains of the action of the trial court in permitting an engineer of a log train to testify in regard to time and distance required to stop the train at the point where the accident occurred. In its eighth point the appellant complains of the action of the trial court in permitting the counsel for appellees to ask a witness, appellant's engineer, a question about railroad company's book of air rules and regulations. In its ninth point, it contends the jury's answers to special issues involving component sections of the issues of discovered peril were contrary to the ·evidence and should be set aside. In its tenth point it maintains that the award of damages in the sum of $26,000 was grossly excessive and should be set aside.

The issue of discovered peril was pleaded and was raised by the testimony in the case. We are unable to agree with the contentions of the appellant that the court should have instructed a verdict for the appellant, and that there was no evidence to support the findings of the jury upon the various issues submitting the question of discovered peril and that the findings were contrary to and against the great weight and preponderance of the evidence. The law is well settled in Texas that the fact of the discovery and realization of a person in a position of peril by the operatives of a railroad train may be proved by circumstantial evidence, and this is true even in the face of direct and positive evidence to the contrary on the part of the members of the train crew. San Antonio A. & P. R. Co. v. Jaramilla, Tex. Civ.App., 180 S.W. 1126; Houston & T. C. R. Co. v. Finn, Tex.Civ.App., 107 S.W. 94; Id., 101 Tex. 511, 109 S.W. 918; International Great Northern R. Co. v. Pence, Tex.Civ.App., 113 S.W.2d 206; Texas & N. O. R. Co. v. Goodwin, Tex.Civ.App., 40 S.W.2d 182. The fireman of appellant's locomotive in this case testified that the deceased was sitting on the railroad track on the side of the track which was visible to the fireman, that he saw him only after the engine was passing across a street 133 feet away from the point where deceased was sitting; that he then gave warning to the engineer but that it was then too late to stop the train in time to avoid striking the deceased; that he had not been looking up the railroad track beyond such street; that he was observing traffic on the street itself and did not look up the railroad right of way to where deceased was sitting until his engine was crossing said street. The record is replete with photographs and drawings of the locality at which the accident occurred and it seems to be well established that a person on the railroad track or on the engine could have seen the deceased at the place he was sitting at a point considerably back of and further down the track from the point where the fireman says he first saw him. Appellant vigorously insists in its brief that a mere showing that the operatives of the train could have seen the deceased is not sufficient and that there is a total absence here of any fact showing or tending to show that the fireman actually did discover the deceased until he had crossed or was crossing the street 133 feet away. The testimony of the fireman, the engineer and the conductor was at times evasive in its nature to the extent that the jury was warranted in not giving their testimony full faith and credit. Neither of these three members of the train crew on cross-examination would give any testimony about the distance in which the train could have been stopped at that time, considering the speed, the length and weight of the train and the type of road bed on which it was operating. The conductor even went so far as to say that he did not know

whether the train could have been stopped within a mile. The engine's bell was ringing and its whistle was blowing immediately before the accident. Both the engineer and fireman denied on cross-examination that they had seen the deceased some distance before crossing the last street in Livingston before the deceased was struck, and denied that they were trying to warn him and scare him off the track by ringing the bell and blowing the whistle. The fireman testified that when he first discovered the deceased sitting on the track, as he crossed the street, and realized that he was in a position of peril he "hollered to engineer, 'Hold it—that will do,' and waived him to stop." The engineer was blowing the whistle and did not hear him at first and the signal had to be repeated. Other citizens of Livingston, including the district clerk, testified they heard the train whistle as it came by the court house a block away, and heard the train stopping immediately afterwards. The jury was warranted in deducing from these facts that the fireman had seen the deceased before he says he saw him and that he and the engineer were sounding the bell and the whistle with the hope that the deceased would hear them and get off the track and out of his position of peril. It is not unreasonable to believe that from the wording of the fireman's cry to the engineer, "Hold it, that will do," together with the above testimony, the jury believed that such a signal conveyed the information to the engineer that the whistling was not going to get the deceased off the track and he would have to stop the train. We overrule the first contention of the appellant.

■ No error is presented by the appellant's second point in which it complains of the action of the trial court in submitting special issues Nos. 1 and 2. Appellant says that the affirmative of these questions was not controverted in the evidence. The issues called for findings of the jury as to whether deceased was in a position of peril and whether the appellant's fireman discovered and realized the perilous position of deceased. Even though it be granted there was no controversy in the testimony as to these two facts, no harm is shown to have resulted in the submission of these two issues.

In view of the disposition we have made upon appellant's first point, discussed above, we find no error presented in appellant's third, fourth, fifth, sixth and ninth points. These points deal with the submission by the court of special issues involving the component parts of the issue of discovered peril. It follows from our discussion of appellant's first point that we believe the issue of discovered peril was pleaded and was raised by the testimony and the answers of the jury to such special issues are supported by the testimony.

■■ No error is presented by the appellant's seventh point, which complains of the action of the trial court in permitting Mr. Barnett to testify as an expert on the operation of locomotives at the place of the accident. Barnett testified that he was a locomotive engineer, that he had been such for twenty years and had operated a log train over the particular stretch of railroad where appellant's train was operating at the time of the accident, that his train was equipped with air brakes, that he had observed the appellant's equipment and was familiar with the operation of the type of engine which was pulling the train in question and with the mode of operation through the town of Livingston. The question of the sufficiency of the qualifications of an expert witness rests largely within the discretion of the trial court and we do not believe that the trial court abused its discretion in this instance. Montgomery Ward & Co. v. Levy, Tex.Civ.App., 136 S.W.2d 663. We think the witness was shown to possess the experience which would qualify him to testify as to the distance in which a train could be stopped. Galveston H. & S. A. R. Co. v. Murray et al., Tex.Civ.App., 99 S.W. 144; El Paso & S. W. R. Co. et al. v. Havens, Tex.Civ. App., 216 S.W. 144; San Antonio U. & G. R. Co. v. Galbreath, Tex.Civ.App., 185 S. W. 901.

■ While appellant's engineer was testifying on cross-examination, counsel for appellees asked him whether he had with him "one of these air rule books." He answered that he did not have one and did not know of any one there that had one. Then he was asked the following question: "Isn't it a fact those air rule books, and under those air rule and instructions they will show you could stop that train in that speed and under those conditions at less than 100 feet? That the air rules and regulations, they are furnished them by the company for them to study and familiarize themselves, will show that a train loaded as that one was, and under

these conditions, could be stopped in less than 100 feet?" Counsel for appellant objected to the question and moved the court for a mistrial. The court sustained the objection and instructed the jury that "you won't consider that for any purpose." Counsel then asked counsel for appellant, "Will you loan me yours, Mr. Arterbury?" The same objection was made and motion for mistrial was renewed. The court instructed the jury that "You wont consider that question for any purpose." We do not believe that this presents error. The question was never answered by the witness, appellant's objection to it was sustained and the jury was instructed not to consider the question as to the witness or counsel.

The appellant's point in regard to excessiveness of the award of damages presents a troublesome problem. The total of the jury's award and damages was $26,000. The deceased was 51 years of age, he had no education or experience which would qualify him for any type of work other than manual labor. For four or five years before his death he lived on a small farm where he and his family produced a small amount of truck, poultry and eggs. He worked as a share-cropper and no testimony is in the record as to what his earnings were in that work. He had worked part of his time at a forestry job and part of his time as janitor for the Livingston school. No testimony is in the record as to the amount of money earned in these activities. There is no testimony as to his life expectancy and we can not tell from the record how much money he had earned in any year of his life. Granting, however, from the sketchy testimony that the deceased had a life expectancy of 17 years and would earn approximately $100 a month throughout that expectancy, his total earnings would have been approximately $20,000. Had he contributed four-fifths of his earnings to his dependents, which is a high percentage of contribution, his contribution would have been only $16,000. We do not believe that an award in excess of this amount should be permitted to stand and unless a remittitur in the sum of $10,000 should be filed by the appellees in proportion to the amounts awarded each in the judgment, the case will be reversed and remanded for a new trial. If the remittitur is filed within 10 days the judgment of the district court will be affirmed. The proportionate amounts to the various appellees made in the court's judgment on the verdict of the jury will not be disturbed and in case remittitur is filed judgment will be affirmed for each appellee for eight-thirteenths of the various amounts awarded in the judgment.