## HARTMAN HALL v. O. C. WHITAKER COMPANY.

No. A-209. Decided January 10, 1945.
Rehearing Granted February 21, 1945.
Second rehearing overruled March 21, 1945.
(185 S. W., 2d Series, 720.)

398

*Lamar Cecil* and *Orgain, Carroll & Bell,* all of Beaumont, for petitioner.

On the proposition that the Court of Civil Appeals should not have rendered a judgment but should have remanded the cause for a new trial, petitioners cite: Texas Emp. Ins. Assn. v. Herring, 280 S. W. 740; Combes v. Stringer, 106 Texas 427, 167 S. W. 217; 2 C. J. S. 1227, sec. 99.

*David C. Marcus* and *C. A. Lord,* both of Beaumont, and *Kemper & Cramer,* of Houston, for respondent.

A cause should not be remanded in order to permit a party to amend his pleadings, 'when all things necessary to the determination of the rights of the parties made by the pleadings in the cause had been presented and passed upon by the trial court. Yarbrough v. Booher, 141 Texas 420, 174 S. W. (2d) 47; Drummond v. Benson, 133 S. W. (2d) 154; Wells Fargo & Co. v. Waites, 69 S. W. 450.

MR. JUDGE FOLLEY, of the Commission of Appeals, delivered the opinion for the Court.

This suit was filed by petitioner, Hartman Hall, against the respondent, O. C. Whitaker Company, a corporation, to recover damages for personal injuries sustained by him in a collision between an automobile he was driving and a pickup truck operated by Roy Grimes, alleged to have been the agent, servant and employee of respondent. At the time of the collision Grimes was transporting Alfred Jones and T. B. Gary, two employees of respondent, to their residence in Beaumont from their place of work where respondent was engaged in constructing a pipe line at a point about twenty miles from Beaumont. The chief controversy in the suit is whether Grimes was transporting such employees under such circumstances as to create the relationship of master and servant between him and respondent.

The trial in the district court resulted in a judgment for petitioner in the sum of $45,750. The Court of Civil Appeals reversed the judgment of the trial court and rendered one for respondent. 180 S. W. (2d) 177.

Respondent was laying a pipe line near Fannett where it had a large number of workmen, divided into several crews. Henry Tatum was the superintendent or general foreman of the entire construction work and had been employed in that capacity for a number of years. He had full authority and control over the job and all its details. He was authorized to hire the trucks and foreman over the various crews, but the foreman hired their own men who worked under them. The superintendent had from five to six foremen on the construction work. The company had from five to eight trucks which it used or hired for use on the work. The superintendent had not authorized the crew foreman or anyone else to hire or lease any trucks or equipment. The superintendent's son, Merrill Tatum, an experienced laborer in laying pipe lines, was employed by his father as foreman over one of the crews which contained from eighteen to twenty-five workmen. It was with this crew that Jones and Gary worked. This was the "doping" crew which applied an asphalt substance to the pipe and wrapped it in heavy paper. The crew included five men who operated a Holiday machine which was used to inspect the pipe for defects after the application of the asphalt and heavy paper. It was Merrill Tatium's duty to oversee the work performed by his crew. He had authority to employ and discharge workmen in his crew, but had no authority to hire trucks or other conveyances to be used in connection with the work. B. W. Melton, an employee in Merrill Tatum's crew, was also an experienced workman and was particularly efficient in operating the Holiday machine. He usually operated it and instructed other members of the crew about such work. In the absence of the foreman he usually directed the crew with which he worked. He had no authority to employ or discharge other employees.

Respondent maintained a warehouse and workshop in Beaumont where the workmen in all the crews assembled each morning. From this point they were conveyed in trucks owned or leased by respondent to the field where the work was being done. The workmen were not paid for the time consumed in reaching the place of work but were paid for the time used in returning therefrom to Beaumont.

Viewing the strongly controverted evidence most favorably for the petitioner, it appears that the doping machine broke

down about noon on December 17, 1940, and it became necessary to place it upon the truck used to transport the employees in order to return the machine to the warehouse for necessary repairs. This was the only truck of respondent then available for the use of the crew at this particular place. The weather on this occasion was damp and cold, the temperature ranging from thirty-four to thirty-eight degrees. The breakdown of the doping machine compelled the entire crew under Merrill Tatum to cease work for the remainder of the day. All of the men in this crew were instructed to return to Beaumont. Roy Grimes had been employed by respondent up to December 12, 1940, when he ceased working and was paid in full for his prior services. He had no connection with respondent on the day of the collision. On that day he decided he would visit some of his friends on the construction job. He dove his pickup truck to the scene of the construction where he remained until the crew under Merrill Tatum ceased work for the day. After the loading of the doping machine on the truck of respondent there was not enough room remaining thereon for Jones and Gary to ride back to Beaumont, and B. W. Melton, their fellow employee, asked Grimes to transport them in his truck. The superintendent, Henry Tatum, was not present and knew nothing about the arrangement Melton made with Grimes. Merrill Tatum was present and could have heard the conversation. Jones and Gary left with Grimes in the latter's truck ahead of the company truck. On their trip to Beaumont the collision occurred with the automobile driven by petitioner, which resulted in petitioner's injuries.

At the conclusion of the testimony respondent presented a motion for an instructed verdict, which was overruled by the trial court. The cause was submitted to a jury, and, in support of petitioner's contention of the existence of the relationship of master and servant, the jury found that the employee Melton made the arrangement with Grimes; that Merrill Tatum, the foreman, heard the agreement and acquisced in it; that Melton acted with implied authority from respondent; that Grimes was transporting the employees to Beaumont in furtherance of the business of respondent; that an emergency existed with reference to transporting the employees; and that Grimes was an emergency servant of respondent in transporting the employees. Other issues not here material were found in favor of petitioner as to negligence, proximate cause and damages. Respondent's motion for judgment non obstanté veredicto was overruled.

■ The Court of Civil Appeals sustained assignments of respondent based on the trial court's action in refusing the in-

structed verdict and the motion for judgment non obstante veredicto, and rendered judgment for respondent. Such holdings were upon the theory that there was no evidence to show that Melton or Merrill Tatum possessed any authority to hire Grimes' truck to transport respondent's employees, and that no emergency existed, as found by the jury, that would authorize either of them to employ Grimes to transport the. men to Beaumont under the emergency employment doctrine. It is our opinion the Court of Civil Appeals was correct in these conclusions.

There is no evidence that either Melton or Merrill Tatum possessed any express authority to hire Grimes or his truck to transport Jones and Gary to Beaumont from their place of work, nor was there any intimation of any prior acts or circumstances of a similar nature indicating any implied or apparant authority for such employment. On the contrary, the uncontroverted testimony, about which there is no suspicion as to its verity, conclusively shows that Henry Tatum, the general foreman, was the only one who had ever engaged conveyances for transportation of the employees or who possessed the authority to do so. It was undisputed that he was not cognizant of, and had no connection with, the act of Melton or Merrill Tatum in engaging the truck of Grimes to transport the two employees to Beaumont.

■ We are also of the opinion no emergency existed such as would invoke the emergency employment doctrine. This doctrine is succinctly stated in 14 Words & Phrases, .Permanent Edition, p. 313, wherein the text adopts the language of the Court of Appeals of Kentucky in Standard Oil Co. v. Adams, 271 Ky. 221, 111 S. W. (2d) 668, 669, as follows:

"The 'emergency employment doctrine' is, that a regularly employed servant of a principal possesses implied authority to engage an assistant to aid servant in performing a task, within scope of duties of servant in serving master, in case of emergency rendering it absolutely necessary to obtain such assistance, and without which emergency conditions could not be overcome by servant or any of his coemployees in regular service of their common master."

■ The doctrine announced is of long standing and of general application. 76 A. L. R. 963. In its application it is universally held that the emergency must not only occur suddenly and unpectedly but also must be so urgent and critical that the employing servant, together with his associated employees cannot remedy it. Such an emergency usually arises when someone is

seriously injured, and in such instances, in the absence of some person with authority to act, the law presumes in the interest of humanity and justice that some representative of the principal who may be present shall be clothed with authority to summon such assistance as may be reasonably necessary to save life or prevent suffering. Texas Bldg. Co. v. Drs. Albert & Edgar, 57 Texas Civ. App. 638, 123 S. W. 716; Gray v. Lumpkins & Thomas, 159 S. W. 880, writ refused. In most every business and employment there are exigencies which are not anticipated, and which require a servant, in the absence of his superior, to act for the immediate protection of the principal, and he may do things in his master's interest when the emergency arises which transcend his usual authority and they will be deemed to have been authorized. Marks v. Rochester Ry. Co., 146 N. Y. 181, 40 N. E. 782; 35 American Jurisprudence, 592, Sec. 164. The person summoned to render assistance in such instances is held to be the servant of the master.

■ However, the person engaged in this case was not enlisted by reason of an emergency but, at most, merely to avoid an inconvenience, which is insufficient to invoke the doctrine. Mandala v. Wells, 209 N. Y. Supp. 35, 212 App. Div. 370. The weather, though damp and disagreeable, was not such as to require the immediate removal of the workmen to Beaumont. It was of the same sort in which they had worked that morning. Although there was no other company truck available for the use of Jones and Gary at the particular place where they were working, there were other trucks of respondent on the pipe line where other crews were engaged. The superintendent himself, though not present at the particular time and place in question, had a pickup truck in close proximity thereto which might have been used to transport Jones and Gary to Beaumont. He used this truck in over seeing the work of the various crews up and down the line. It was his duty to see that the men were transported to and from their work and he had been diligent in this respect. As heretofore mentioned the crew with which Jones and Gary worked ceased their labors at noon on the day of the collission and the superintendent had a full half day in which to arrange for their transportation to Beaumont. This, no doubt, he would have done, even if it necessitated a return trip from town by one of the trucks on the job. From these circumstances it affirmatively appears that the conditions prevailing were not so urgent or critical that they might not have been overcome by the regular servants of respondent without the assistance of an emergency servant. It is therefore obvious that

no emergency existed within the meaning of the emergency employment doctrine.

We are also in accord with the holding of the Court of Civil Appeals that the cause was fully developed in the trial court, and thus the Court of Civil Appeals was authorized to render the judgment that should have been entered in the trial court. Rule 434 T. R. C. P.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 10, 1945.

### ON MOTION FOR REHEARING.

MR. JUSTICE SHARP delivered the opinion of the Court.

In the orginal opinion rendered herein the judgment of the Court of Civil Appeals, reversing the judgment of the trial court and rendering judgment for respondent, was affirmed. Petitioner presents a vigorous motion for rehearing, contending that the judgments of the Court of Civil Appeals and of this Court should be set aside, and that the judgment of the trial court should be affirmed; or, in the alternative, that the judgment should be reversed and the case remanded to the trial court for a new trial. As a basis for his alternative contention petitioner presents the following:

"(1) It does not conclusively appear that the evidence was fully developed upon the question of authority;

"(2) Where the question of authority as a basis for the judgment is grounded on implied findings and it could not be said that it was conclusive that the evidence had been fully developed upon that point, the court will remand; and,

"(3) Where a litigant is led to believe by the ruling of the trial court that he has raised an issue of fact as to one material matter as a basis for recovery, and the case was fully developed upon any other theory as a basis for recovery, and the court concludes that as to the one upon which the case was fully developed was not raised by the evidence, and where as to the other it could not be conclusively said that it could not be more fully developed, it is the duty of the court to reverse and remand, rather than to render."

The trial court thought there was evidence to sustain petitioner's cause of action, and in response to issues submitted to

them the jury made findings in favor of petitioner, and judgment was entered accordingly. Many witnesses testified in the case, and the question was raised as to whether or not Merrill Tatum and his father, Red Tatum, had either actual or express authority to hire trucks for transportation, or had theretofore hired trucks for transportation, for the men to ride to and from their work. It is shown that out of 125 witnesses only two interested witnesses testified upon the question of authority, and that the testimony along that line has not been so fully developed as to justify an appellate court, in the face of the record, in reversing and rendering the judgment in this case.

■ The rule is well established that when a Court of Civil Appeals reverses the judgment of a trial court because of the lack of evidence supporting same, it will not render judgment unless it appears that the case in that respect has been fully developed. When it does not appear that the facts have been fully developed, the Supreme Court when reversing the judgment of the Court of Civil Appeals will remand and not render the case. Lanford v. Smith, 128 Texas 373, 99 S. W. (2d) 593; Taylor v. United States F. & G. Co. (Com. App.), 283 S. W. 161; Turner v. The Texas Company, 138 Texas 380, 159 S. W. (2d) 112; Jones Fine Bread Co. v. Smith, 136 S. W. (2d) 234; Waggoner v. Herring-Showers Lumber Co., 120 Texas 605, 40 S. W. (2d) 1; Dunn v. Taylor, 102 Texas 80, 113 S. W. 265; Comet Motor Freight Lines v. Holmes, 175 S. W. (2d) 464; Rule 505, Texas Rules of Civil Procedure.

Petitioner's motion for rehearing is granted, and the judgment of this Court heretofore entered in this case is set aside. That part of the judgment of the Court of Civil Appeals reversing the judgment of the trial court is affirmed, but that part of the judgment of the Court of Civil Appeals rendering judgment for respondent is reversed, and this cause is remanded to the trial court for a new trial.

Opinion delivered February 21, 1945.

Second motion for rehearing overruled March 21, 1945.

Mr. Chief Justice Alexander, dissenting.

I am in accord with the holding in the original opinion that the Court of Civil Appeals properly reversed the judgment of the trial court on the ground that the judgment was not sup-

ported by the evidence. I am opposed, however, to remanding the case for a new trial.

Rule 505 reads in part as follows:

"*Decision.*—In each case, the Supreme Court shall either affirm the judgment, or reverse and render such judgment as the Court of Civil Appeals should have rendered, or *reverse the judgment and remand the case to the lower court, if it shall appear that the justice of the case demands another trial, * * *.*" (Emphasis mine.)

The clear meaning of the above rule is that when a case is reversed for want of evidence it should be remanded only if it shall appear that the justice of the case demands another trial.

In the case at bar there was a fair, full, and complete development of the case upon the first trial. The parties are supposed to fully develop their case when it is tried, and, in the absence of a showing to the contrary, this will be presumed to have been done. The plaintiff does not contend that he was prevented from fully developing his case upon the former trial. He makes no reasonable showing that he will be able to produce other evidence upon another trial. There is therefore nothing to indicate that the justice of the case requires another trial.

If the case had been tried upon an erroneous theory, or if the plaintiff had been deprived of relevant testimony by some erroneous ruling of the trial court, there would be good reason for remanding the case for another trial. Williams v. Safety Casualty Co., 129 Texas 184, 102 S. W. (2d) 178. But no such case is here presented.

There should be an end to litigation. When a case has been properly tried, and plaintiff, without any reasonable excuse, has failed to make out a case, the case should not be remanded for another trial merely to see if plaintiff can do better upon another trial. At least he should not be given that opportunity in the absence of reasonable assurance that he can produce other evidence upon another trial, and the showing of a reasonable excuse for having failed to produce same upon the former trial.

In my opinion the State should not be put to the expense nor the parties to the annoyance of trying this case again.

Opinion delivered February 21, 1945.