TEXAS & NEW ORLEANS RAILROAD COMPANY V. DAISY GRACE ET AL.

No. A-488. Decided June 6, 1945.
Rehearing overruled July 11, 1945.
(188 S. W., 2d Series, 378.)

*Martin Feagin, Roy L. Arterbury* and *Baker, Botts, Andrews & Wharton,* all of Houston, for petitioners.

Since there was no evidence in the record justifying the submission of the issue of discovered peril, the court erred in over-ruling the defendant's motion for instructed verdict, and the Court of Civil Appeals should have so held. Texas & Pac. Ry Co. v. Brown, 142 Texas 385, 181 S. W. (2d) 68; Krause v. Pitcairn, 350 Mo. 339, 167 S. W. (2d) 74; Fort Worth & D. C. Ry. Co. v. Shetter, 94 Texas 196, 59 S. W. 523.

*Campbell & Foreman* and *Ernest A. Coker,* all of Livingston, for respondents.

The pleading and evidence amply supporting plaintiffs' recovery on the issue of discovered peril, the judgment for plaintiffs was properly sustained by the Court of Civil Appeals. Brown v. Griffin, 71 Texas 654, 9 S. W. 546; Hines v. Arrant, 225 S. W. 767; Houston & T. C. Ry. Co. v. Finn, 101 Texas 511, 109 S. W. 918.

MR. JUDGE HICKMAN, of the Commission of Appeals delivered the opinion for the Court.

In the trial court respondents were awarded judgment against petitioner for $26,000 on account of the death of Josh Grace, who lost his life as the result of being struck by a freight train operated by petitioner in the City of Livingston. Respondents are the surviving wife, minor children and mother of the deceased. The Court of Civil Appeals suggested a remittur of $10,000 and upon the filing thereof the judgment of the trial court was reformed and, as reformed, was affirmed. 185 S. W. (2d) 219.

In their petition the respondents pleaded various acts of negligence on the part of the railroad employees and, as a bar to their right of recovery on the alleged grounds of negligence, the petitioner pleaded various acts of contributory negligence on the part of deceased. No special issues were submitted to the jury on any of the grounds of negligence alleged by respondents and no request was made for the submission thereof. Consequently no issues were submitted with reference to the contributory negligence of the deceased. Special issues were submitted to the jury on the sole ground of liability under the principle of discovered peril pleaded by respondents and, upon findings by the jury favorable to them thereon, judgment was rendered in their favor as above indicated.

The facts with reference to how deceased met his death are well stated in the opinion of the Court of Civil Appeals from which we quote:

"On April 15, 1943, Josh Grace was killed by a freight train of the appellant, Texas & New Orleans Railroad Company, in the town of Livingston. The deceased had been drinking intoxicants during the day and was sitting on the railroad track on the end of a tie, with his back to the rail, with his head on his hands at a place where the railroad track goes through Livingston, between two main thoroughfares of that town. The train consisted of 46 loaded cars and a caboose and an engine. The

railroad track at that point is on a considerable upgrade and curves slightly, to the west as the track proceeds from south to north. The train was travelling in a northeasterly direction. He was sitting on the west side of the track and because of the curve in the railroad track his postion was visible only to the fireman sitting on the left-hand side of the engine. The engineer on the right-hand side could not see him. The portion of the track where the accident occurred was a sort of alley-way between a group of business houses and had been frequently used by pedestrians, which fact was known to the train operators. The train was running at a speed of 18 or 20 miles per hour and its bell was ringing and its whistle was blowing immediately before Grace was struck and killed. The accident occurred about 4:20 in the afternoon. * * *."

■ The principal question for decision is presented in the first point of the application, which challenges the ruling of the trial court, affirmed by the Court of Civil Appeals, that there was evidence warranting the submission of special issues on the ground of discovered peril. Before considering the specific facts claimed by respondents to raise fact issues on that ground we point out that, while such issues may be raised by circumstantial evidence, still the evidence must go further than merely to establish that the employees should have discovered the peril of the deceased or that thy were negligent in failing to do so. In the absence of actual knowledge on the part of the firemen or engineer of the presence of the deceased on the railroad track in time to have avoided striking him by the use of all the means at their command consistent with their own safety and the safety of their train, no liability exists. The dereliction of which the findings convict them is an act of inhumanity which would never be imputed in the absence of competent evidence warranting an inference of guilt. The specific question is not whether the fireman might have, or should have discovered the deceased by the exercise of a reasonable lookout, but whether he actually did discover him in time to have averted the injury. Texas & Pacific Railway Co. v. Breadow, 90 Texas 26, 35 S. W. 490; Galveston H. & S. A. Ry. Co. v. Price (Com. App.) 240 S. W. 524; Baker v. Shafter (Com. App.) 231 S. W. 349; Turner v. Texas Co., 138 Texas 380, 159 S. W. (2d) 112; Texas & Pacific Railway Co. v. Brown, 142 Texas 385, 181 S. W. (2d) 68.

It is shown by the record that while the train was moving over the last five or six hundred feet before reaching the spot where deceased was killed, it was moving over and cross the busiest streets of the City of Livingston. The track ran within one hundred feet of the courthouse. One of the streets over

which it crossed was Church street, which was also a state and federal highway. Heavy traffic moved along that street and other streets crossed by the train. All parties, including the operatives of the train, recognized that the crossings were dangerous. The testimony of the firemen and engineer that they felt duty bound to keep a sharp lookout to the right and left as they approached and passed over these crossings can hardly be doubted. This excerpt is taken from the testimony of the firemen;

"I stated a while ago I was watching the highways and street crossing; that I figured it was a dangerous point and I was taking every precaution to prevent anyone from crossing or coming upon the track. I continued to keep my lookout on that highway and Jackson street, which meets the highway, until the engine crossed the sidewalk on the farthest street, Church street, or the highway. After the engine had gotten across the crossing it made it impossible for people to go in front of it. I then looked up the track and that is when I saw the man. When I looked up the track and saw the man I hollered to the engineer; 'hold it— that will do,' and waived him to stop."

The engineer testified:

"As I come into Livingston the track is curved. My seat is on the outside of the curve and I could not see down the track in front of me. Looking outside of my window on the right hand side it was impossible for me to see the man. I had no knowledge or information that the man was on the track before the fireman hollered to me. After I heard him I immediately put the brakes into emergency. That is the quickest way to stop the engine. There was no other means at my command to stop the engine. As an engineer I do not know of anything that could have been done that I did not do after I got the signal."

The point at which the deceased was struck was 133 feet north of the north line of Church street. The train was brought to a stop 429 feet beyond the point where the brakes were applied. The explanations given by the fireman and engineer were reasonable, but since they were interested witnesses the respondents would have us discard their testimony altogether. For the purposes of this opinion we may do so, but to discard the testimony of a witness on the ground that he is an interested witness does not authorize a court to believe the opposite of what it imports. The fact that the testimony of an interested witness is not accepted as evidence in his favor does not operate to controvert it into evidence against him. As recently stated

by this court in Texas & Pacific Railroad Co. v. Brown, 142 Texas 385, 181 S. W. 2d) 68, 72:

"* * * We recognize the rule that a jury may accept or reject portions of the testimony of a witness, Austin Fire Ins. Co. v. Adams-Childers Co., Tex. Com. App., 246 S. W. 365; still, there must be other facts and circumstances, or the testimony of other witnesses in evidence, to supply that which has been rejected when the question to be determined is whether the case made is one which in law is sufficient to fix liability."

■ What, then, is the testimony relied upon by respondents to raise the issue that the fireman actually discovered the presence of deceased on the track in time to have averted the injury? We have carefully examined the opinion of the Court of Civil Appeals and it appears therefrom that the testimony which it considered to be sufficient to warrant the inference of discovered peril was the expression used by the fireman himself and quoted above. He stated that when he looked up the track and saw the deceased he "hollered to the engineer, 'hold it—that will do' and waived him to stop." That honorable court was of the opinion that it was not unreasonable to believe that by the use of that language the jury believed that the information was thereby conveyed to the engineer that whistling was not going to get the deceased off the track, and that the engineer would have to stop the train. There is no testimony in the record as to the meaning to railroad men of the expression "hold it—that will do." On its face it does not appear to mean what it is claimed the jury might have decided that it did mean. If the inference could be drawn that it had that meaning, still the jury would not be warranted from that inference to draw the further inference that, contrary to the testimony of the fireman and engineer, the former had theretofore notified the latter of the presence of the deceased at a time when the latter could have brought his train to a stop and thereby have averted the injury, but that instead of doing so, the two were ringing the bell and sounding the whistle in an effort to frighten deceased from the track. It is elementary that inferences can be drawn only from facts and not from other inferences. That rule has special application in a case, like this, where a very doubtful inference is sought to be drawn from another one equally doubtful.

Respondents rely on the fact that the bell was being rung constantly and the whistle was being blown repeatedly for some distance before the train reached the spot of the accident. That circumstance is relied upon as constituting some evidence that the presence of the deceased was discovered several hundred

feet below the point where he was sitting. Under some circumstances that would be some evidence of discovery, but under the circumstances of this case we cannot regard it as any evidence thereof. As pointed out above, the train was passing through the business section of the city, crossing a street about every 300 feet. It was the statutory duty of the operatives to ring the bell and blow the whistle for each of the street crossings. Artricle 6371, R. S. 1925. The fact that they were obeying the law cannot be converted into a circumstance to their prejudice. There is no testimony that the whistle was being blown or the bell was being rung in any unusual manner. Absent any testimony to that effect, the blowing of the whistle and the ringing of the bell cannot be regarded as circumstances lending any support to respondents' theory.

There is no testimony in the record as to the length of time required to bring a train like the instant one to a stop after the emergency brakes are applied other than the fact that it was brought to a stop in 429 feet. Respondents tendered the testimony of an engineer who had operated a logging train for various lumber companies in East Texas in an effort to supply this fatal defect in their case, but this testimony was properly rejected upon the objection by petitioner that he was not qualified to speak as an expert on that subject. If the jury concluded that the train could have been brought to a stop within 133 feet, the distance which the deceased was ahead of the locomotive when the firemen admits that he discovered him, such conclusion was based upon pure conjecture.

From a careful review of this record we have come to the conclusion that respondents have but raised issues of fact that the fireman could or should have seen the deceased sooner than he testified that he did see him. By all of the authorities that evidence falls short of warranting the inference that he actually saw him in time to have averted the injury. We therefore conclude that the special issues on the theory of discovered peril should not have been submitted.

Two other questions are briefed in the application, but, since it appears that they will arise upon another trial, they will not be discussed.

The judgment of the courts below are reversed and on authority of Hall v. O. C. Whittaker Co., 143 Texas 397, 185 S. W. 2d) 720, on motion for rehearing, the cause is remanded.

Opinion adopted by the Supreme Court June 6, 1945.

Rehearing overruled July 11, 1945.