**TEXAS & N. O. R. CO. v. GRACE et al.**

**No. 4448.**

Court of Civil Appeals of Texas. Beaumont.

Sept. 18, 1947.

Rehearing Denied Oct. 15, 1947.

Roy L. Arterbury, of Houston, and M. M. Feagin, of Livingston, for appellant.

Campbell & Foreman and Ernest Coker, all of Livingston, for appellee.

MURRAY, Justice.

This is an appeal from a judgment of the district court of Polk County against the appellant railroad company in favor of appellees, the surviving wife and children of Josh Grace, deceased. This is the second time this case has been before this court, the first being reported at 185 S.W.2d 219. The opinion of the Supreme Court reversing the judgments of this court and the trial court is reported at 144 Tex. 71, 188

S.W.2d 378. A detailed statement of the facts may be found in those two opinions, and it is not necessary to repeat at length here the facts of the case.

Josh Grace, husband and father of the appellees, was struck and killed by a freight train of the appellant while he was sitting on the end of a tie of the railroad track in the City of Livingston. As in the first trial, the appellees sought recovery solely upon issues involving the application of the doctrine of discovered peril, and the jury having found in favor of the appellees upon such issues submitted by the court, judgment was again rendered in their favor. Appellant's motion for a new trial was overruled and it has duly perfected its appeal to this court.

As it contended in the former appeal of this case, the appellant again now maintains by its first and second points that there was no evidence in the record to justify the trial court's submission of the issues of discovered peril and that the verdict of the jury, in answer to such issues, was contrary to and against the great weight and preponderance of the evidence. Other matters were brought forward by appellant by its third, fourth and fifth points, but because of our disposition of the appeal upon the questions presented in the first and second points they will not be discussed nor passed upon.

▆ The facts in the present appeal must be viewed and analyzed in the light of the opinion of the Supreme Court on the former appeal. As we viewed the facts on the former appeal, the trial court was warranted in submitting special issues to the jury which applied the doctrine of discovered peril and the evidence was sufficient to support the findings of the jury in favor of the appellees thereon. We attached some significance to the testimony of the fireman on the freight engine which struck and killed Josh Grace to the effect that when he saw Grace on the tie 133 feet ahead of his engine, he yelled to his engineer the words "hold it that will do." We believed that such testimony, taken in connection with other circumstances in evidence, such as the continued blowing of the whistle of the engine when it approached the point where Josh Grace was sitting on a tie on the railroad track, the weight and speed of the train, all taken together, made it reasonable to assume that the jury believed from such testimony that the fireman had theretofore discovered Josh Grace in a position of peril on the railroad track and that the engine crew was blowing its whistle in an effort to frighten him off the track, and when the fireman realized that he was not going to get off the track himself, he so informed the engineer by his shouted message that such whistling had gone far enough and he should stop the train. The Supreme Court, in its opinion, rejected such an analysis of this testimony and attached no significance to the remarks of the fireman other than to designate it as a request to stop the train. It was pointed out in such opinion that such an expression on its face would not appear to mean what was claimed that the jury might have decided that it did mean. In our view, the words "that will do" were of more importance than the words "hold it." We believe that it is common knowledge of everyone in any trade, business or operation that the phrase "hold it" is generally accepted to mean stop or cease whatever is being done. But the important part appeared to us in the former opinion to be the phrase "that will do", which seemed to be an expression by the fireman that, in his opinion, the blowing of the whistle was not going to achieve the desired result of warning Josh Grace off of the railroad track. In the light of the opinion of the Supreme Court, however, even if such an inference favorable to the appellees could be drawn from such words, still the jury would not be warranted from that inference to draw the further inference that, contrary to the testimony of the fireman and the engineer, the fireman had theretofore notified the engineer of the presence of the deceased at a time when he could have brought his train to a stop and thereby averted the injury, but that instead of doing so, the two were ringing the bell and blowing the whistle in an effort to frighten the deceased from the track.

The opinion of the Supreme Court, in the former appeal, pointed out that there was no testimony in the former trial of this case that the whistle was being blown and the bell was being rung in an unusual man-

ner. In the present record, however, appellees' witnesses Nowlin and Reaves testified at length as to the noise being made by the train on the occasion in question and that the bell ringing and whistling was different from any they had heard on the trips up to that time and that in their opinion it was unusual.

It was also pointed out in the Supreme Court's opinion that there was no testimony in the record as to the length of time required to bring such a train to a stop after the emergency brakes were applied other that the fact that it was stopped in 429 feet. The deceased was sitting at a point on the railroad track 133 feet from the point where the railroad track crosses Church Street in the City of Livingston. In the second trial the appellees introduced the testimony of a witness who testified that he could stop such a train within 100 feet to 120 feet. He did not testify that he had done so, but that he believed he could if given a chance to do so. The appellees also introduced other testimony upon the question of what distance would be required to stop such a train at such a point. By some testimony in regard to an incident which occurred on the afternoon of May 10, 1946, which was sometime after the first trial of this case and some three months before the second trial, a freight train of the appellant was coming through the City of Livingston and on this occasion made an emergency stop somewhere near the scene of the fatal accident of 1943. The testimony of appellees' witnesses to this event differs from that of the train crew as to what actually occurred on this occasion. It can be said, however, that from such testimony the jury would be warranted in believing that such train under such circumstances could be stopped within a distance of 150 to 160 feet.

The law touching upon the doctrine of discovered peril does not make it the duty of the operative of a train or the driver of a truck or automobile to bring his vehicle to a stop every time he discovers a person on or near the track or highway in front of him. When such an operative of a train discovers a person on or approaching the track in front of it and realizes that he is in a perilous position and further realizes that such person will not in all probability be able to extricate himself from such a perilous position, it then becomes the duty of such operative to use all means at his command, consistent with his own safety and that of his passengers and crew, to avoid injury to the person in such perilous position, and his failure to use such means after such discovery and realization becomes negligence on the part of such operative. If the operator of the train or vehicle does not make such discovery and achieve such realization in time to avoid the injury, the doctrine of discovered peril does not apply. Gulf, C. & S. F. R. R. Co. v. Phillips et al., Tex.Civ. App., 183 S.W. 806; Parks v. Airline Motor Coaches, Inc., Tex.Sup., 193 S.W.2d 967, and cases cited therein. It is significant here that the testimony is without dispute that Josh Grace, before he was killed, was not lying down upon the railroad track or any part of it, so that the operative of the train which struck him might have instantly realized, upon seeing him, that he was in such a position of peril that he would not likely be able to extricate himself from it. He was sitting on the end of a tie, facing away from the center of the railroad track with his elbows upon his knees and chin resting on his hands. When the fireman first saw him in this position he could not be charged with the immediate realization that Grace was in such a helpless condition from intoxication that he would not and could not hear nor heed the warning noises from the approaching freight train to get up off the tie and thus remove himself from his perilous position. He could have done so by moving himself one or two feet from the railroad track. Even if the fireman had discovered Grace on the railroad tie some distance before the front of the train reached the north side of Church Street, as is contended by the appellees, there is no evidence in the record from which the jury might conclude that the fireman realized that Grace was going to continue to sit there on the end of the tie and let the train strike him, that he would not in all probability be able to extricate himself from his position of peril there, until he gave his cry to the engineer to "hold it

—that will do." The evidence is insufficient to warrant any finding or conclusion that the engine crew could have done any more than was done by them to prevent the fatal injury to Grace, after such discovery and realization by the fireman at that time. From this state of the record, we must conclude, in the light of the Supreme Court's opinion on the former appeal of this case, that there was no evidence to warrant the trial court's submission to the jury of the issues on discovered peril, nor to support the findings of the jury in its verdict on such issues. We do not believe that there is any evidence that the fireman realized that Grace was not going to get up off the track and save himself in time for the fireman to do or cause to be done any more than was done by the engine crew. The trial court erred in overruling the appellant's motion for instructed verdict.

The judgment of the district court is reversed and judgment is here rendered for the appellant.