Guy A. THOMPSON, Trustee, St. Louis, Brownsville & Mexico Railway Company, Appellant,

v.

Julia L. CREECH et al., Appellees.

No. 12794.

Court of Civil Appeals of Texas.

Galveston.

Oct. 27, 1955.

Rehearing Denied Dec. 1, 1955.

Hutcheson, Taliaferro & Hutcheson, Woodul, Arterbury & Wren, Roy L. Arterbury and Howard S. Hoover, Houston, for appellant.

M. E. Blackburn, Junction, Morris, Underwood & Oldham, Houston, and Morriss, Morriss, Boatwright & Lewis, San Antonio, for appellees.

HAMBLEN, Chief Justice.

The appellees, being the wife, children, father and mother, of Alvin Benton Creech, deceased, sued the appellant for damages for the alleged wrongful death of Alvin Benton Creech at the hands of appellant, when he was struck by its streamlined passenger train, "Valley Eagle", at about 4:00 p. m., April 25, 1949, near Kingsville, Kleberg County, Texas, on appellant's trestle across San Fernando Creek. The deceased had gone up the trestle, which was about 200 feet in length, with a companion, William Lafayette Lee, and the men were about midway the trestle when they discovered the approach of the train, which was traveling at a rate of speed estimated to be from 60 to 75 miles per hour. Upon discovery of the train, the men attempted to outrun the train.

Special issues were submitted to the jury, over appellant's objection, on the doctrine of discovered peril, and damages. The jury answered such issues in favor of the plaintiffs, awarding damages in the sum of $27,659.

At this Court's request, the respective counsel for the parties on both sides have prepared a map, or plat, of the scene of the collision, the original of which, signed by the respective counsel for both sides, is attached to and made a part of this opinion, as "Exhibit A."

Road     Exhibit "A"

N

Direction of Train

Railway

Highway

Bridge

N

San-Fernando Creek

200 Ft

Stream Flow

Estimated 50 to 60 ft

E

N

Sketch of Scene of Accident

S

To Kingsville

# 12,794
Gry A. Thompson vs Julia
L. Creed et al.

Such map, it is thought, greatly clarifies the factual conditions on the ground under which this collision occurred. As presaged by the recitals made, the sole question of law presented to this Court upon the appeal is whether or not the pleadings and the evidence supported the trial court's judgment so entered.

█ This Court concludes—after a painstaking study of the record—that there was no sufficient evidence in the record to justify the submission of the issue of "discovered-peril" to the jury, or to support their findings thereon, and that, in any event, such findings were so against the great weight and preponderance of the evidence heard as to be clearly wrong.

█ In particular, it is our view that appellees failed to meet the burden resting upon them of proving first, a discovery by appellant's employees in such time that by the use of the means at hand they could have avoided colliding with the deceased, and second, that such employees failed to use the means at hand to avoid the collision.

Upon the issue of discovery, appellees offered proof by only two witnesses whose testimony we consider to be of probative value, either directly or by permissible inference. These witnesses were respectively W. L. Lee, previously mentioned, and R. D. Lawrence, appellant's fireman, called as an adverse witness by appellees, who testified by deposition.

Lee identified himself and the deceased as employees of a contractor engaged in widening a highway bridge across San Fernando Creek, which bridge was parallel to and 50 or 60 feet down stream from appellant's railroad trestle. San Fernando Creek was described as a narrow stream which under ordinary conditions could be stepped across, but on the day of the collision and for several days previous had been in a flooded condition with water from bank to bank. Driftwood had accumulated along the upstream side of the railroad trestle to such an extent as to possibly endanger the scaffolding and shor-

ing under the highway bridge. For the purpose of alleviating this danger, Lee and the deceased went upon the trestle equipped with an iron rod and a rope each about 20 feet long. Their plan was to dislodge the drift with the rod, and lead it with the rope to a point where it would not strike the highway bridge. They undertook this task upon their own initiative. Lee knew that appellant's passenger train crossed the trestle at about the same time each day. No notice was given the railroad of their undertaking. They were working at about the middle of the trestle in a stooped-over position, and had been so situated for about 15 to 30 minutes when Lee heard a train whistle at a crossing about ¾ mile up the track. He looked up the track and saw the train. He shouted to the deceased that a train was coming, and thereupon turned and ran at the fastest possible speed toward the south end of the trestle. When about 5 or 6 feet from the end he jumped off of the trestle, landing on the bank. Instantaneously thereafter the deceased's body hit the bank several feet from him.

The record reflects that trial of this case occurred five years after the collision. Lee readily conceded that his recollection might be inaccurate by virtue of such lapse of time. Upon having his memory refreshed by reference to a statement made immediately after the collision, he testified that the crossing was 300 to 400 yards from the trestle. This estimate was based upon recollection only, and the distance could as easily have been 200 yards. As he was running he heard the train whistle a couple more times and thought for a moment that it might stop.

R. D. Lawrence, by deposition, testified that the railroad track, for several miles on either side of the trestle was straight; that the weather was clear and visibility good as far as the eye could see. While he could not see the speedometer, he knew that ordinarily the train travelled at about 59 or 60 miles per hour, and estimated it to be so travelling on this occasion. He estimated that by the use of service brakes the train could be stopped in a distance of

2,500 feet. He had never before experienced the application of the emergency brakes on this train, but estimated that by their use it could be stopped in half that distance, or 1,250 feet. He testified that on the day in question he first discovered the presence of two men on the trestle when the train was about 400 feet distant. Upon such discovery, he did nothing. Asked why he did nothing, he testified that he looked over at the engineer at which time the engineer was blowing the whistle and getting the emergency brake in position. The noise of the whistle, plus the noise incidental to the application of the emergency brakes made any communication with the engineer impossible, besides which, as he stated, "I could see he was doing all he could do."

The law in Texas, in the light of which the foregoing proof must be considered, has been stated by the Supreme Court of Texas in the case of Texas & New Orleans Railroad Company v. Grace, 144 Tex. 71, 188 S.W.2d 378, 379, in the following language:

"Before considering the specific facts claimed by respondents to raise fact issues on that ground we point out that, while such issues may be raised by circumstantial evidence, still the evidence must go further than merely to establish that the employees should have discovered the peril of the deceased or that they were negligent in failing to do so. In the absence of actual knowledge on the part of the fireman or engineer of the presence of the deceased on the railroad track in time to have avoided striking him by the use of all the means at their command consistent with their own safety and the safety of their train, no liability exists. The dereliction of which the findings convict them is an act of inhumanity which should never be imputed in the absence of competent evidence warranting an inference of guilt. The specific question is not whether the fireman might have, or should have discovered the deceased by the exercise of a reasonable lookout, but whether he actually did discover him in time to

have averted the injury. Texas & Pacific Railway Co. v. Breadow, 90 Tex. 26, 36 S.W. 410; Id., Tex.Civ.App., 35 S.W. 490; Galveston, H. & S. A. Ry. Co. v. Price, Tex.Com.App., 240 S.W. 524; Baker v. Shafter, Tex.Com.App., 231 S.W. 349; Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112; Texas. & Pacific Railway Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68. * * *."

We feel too that any consideration of the proof above stated must be made in the light of the undisputed fact that the railroad operatives had no notice of the deceased's intention of going upon its trestle, and no reason to expect him to be there. Lee identified the whistle which first warned him of the approach of the train as a crossing whistle such as was usually given at the crossing north of the trestle. That whistle constitutes no proof whatsoever, in our view, of a discovery by the engineer or fireman of the presence of the men on the trestle. While the distance to the trestle would seem to be capable of exact proof, the only proof in this record is the testimony of Lee, who estimated it at from 200 to 400 yards. It is to be remembered that under all of the testimony the train was then travelling at some speed between 59 and 75 miles per hour. Prior to that time, under all of the proof, the deceased and Lee were stooped over on the edge of the trestle, and only after the whistle was heard did they start running. While running, Lee testified that he heard the train whistle a couple of more times. There is no proof in the record other than that such "couple of more" whistles were those sounded by the engineer, as testified to by the fireman Lawrence. And there is no proof which refutes the testimony of Lawrence that that occurred when the train was 400 feet from the trestle. The negative testimony of another witness, Lopez, that he heard no whistle cannot overcome the probative effect of the testimony of appellee's witness Lee. Lee, the only person other than the deceased to whom the appellant owed a duty to warn, affirmatively heard the train whistle a couple of more times while

he was running. The fireman's testimony regarding the visibility might establish that the appellant's operatives would have discovered the peril of the deceased sooner, but, as pointed out by the Supreme Court, that is insufficient. It is our view that the only evidence of discovery is the testimony of the fireman Lawrence, who fixed it at a point 400 feet from the trestle. Under the only proof in the record relative to the distance in which the train could be stopped, such discovery did not occur at a time when the collision could have been avoided.

Appellees undertake to refute the testimony of the witness Lawrence relative to the application of the emergency brakes, by the testimony of two witnesses who saw the train strike the deceased. These witnesses first saw the train when it was only 75 feet from the trestle. The substance of their testimony is that the train did not appear to be slowing, and they saw no evidence of the application of the brakes. We feel that this testimony lacks probative value to overcome the direct testimony of the witness Lawrence, in view of the complete absence in the record of any proof as to the time required after application for emergency brakes to become effective, the absence of proof as to the rate of deceleration upon their application, and the absence of proof as to any evidence of application which might be visible to an observer. We feel that this is particularly true in view of the fact that the witnesses' time for observation was of not more than three seconds' duration, during which they admittedly were primarily observing the men running ahead of the train.

■ Appellees likewise offered proof that after striking the deceased, the train came to a stop about ¼ of a mile down the track. They contend that this proof, coupled with the estimate of Lawrence that the train could be stopped by application of emergency brakes in 1,250 feet establishes by inference that the brakes were not applied until after the train struck the deceased. We are unable to agree with appellees' contention. In the first place, we have already pointed out the absence in the record of any proof as to the time interval between application and effective operation of emergency brakes. In the second place, the inference upon which appellees rely must in turn be based upon an inference that the brakes remained continuously in emergency position after striking the deceased and until it stopped. It is well settled that the fact or facts relied on to support a presumption or inference must be proved by direct evidence the same as if they were in issue. A presumption of fact cannot rest upon a fact presumed, or, in other words, one presumption cannot be based upon another presumption, nor an inference of fact upon other inferences. General Accident, Fire & Life Assurance Corporation v. Perry, Tex.Civ. App., 264 S.W.2d 198.

■ We have undertaken to analyze carefully the evidence in this record pertinent to the issue of discovered peril. We conclude that the only evidence in the record establishes that discovery by the operatives of the appellant's train of the peril of the deceased occurred when the train was aproximately 400 feet away, and that such discovery was not in time that appellant's operatives could avoid the collision. We recognize that the jury is entitled to reject all of the testimony of the witness Lawrence. But if that testimony be rejected, we find no evidence of probative value upon the issue. Any finding of discovery at a time when the collision could be avoided, and of a failure to use the means at hand to avoid collision must rest upon conjecture and surmise, contrary to the established law in Texas. We, therefore, hold that the judgment of the trial court must be reversed, and judgment here rendered that appellees take nothing.

■ In addition to its points one and two, presenting the legal question of no evidence to warrant the submission of the issues of discovered peril, appellant, by point three, asserts that the findings of the jury responsive to such issues are so against the overwhelming weight and preponder-

ance of the evidence as to be clearly wrong, thus invoking the exclusive fact finding jurisdiction of this Court. We construe the opinion of the Supreme Court in the case of Barker v. Coastal Builders, 271 S.W.2d 798, as holding that our finding that there was no evidence warranting the submission of the issues includes the finding that the answers of the jury thereto were against the overwhelming preponderance of the evidence. In view of such holding, we consider our conclusions heretofore stated as disposing of all points presented.

Reversed and rendered.

GANNON, J., not sitting.