ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. WALLACE et al. (No. 1866.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 21, 1917. Rehearing Denied Jan. 3, 1918.)

1. EVIDENCE ⊜14 — MATTERS OF COMMON KNOWLEDGE.

It is common knowledge that a child of 18 months cannot walk a distance of 135 yards very rapidly.

2. RAILROADS ⊜369(4)—DUTY OF LOOKOUT—INFANTS ON TRACK.

A duty of reasonable lookout, varying according to the danger and all surrounding circumstances, to discover infants near or on the track, devolves on those in charge of a moving train.

3. RAILROADS ⊜389(4)—DUTY OF LOOKOUT—PROXIMATE CAUSE.

Failure of train operatives to keep a proper lookout along the track can be deemed the proximate cause of death of an infant near the track only when it appears that proper lookout would have prevented the injury resulting in death.

4. RAILROADS ⊜389(4)—DUTY OF LOOKOUT—PROXIMATE CAUSE.

Where it appeared that a child killed on railroad track was not discernible by train operatives at any time before she reached a point within five or six feet of the track, and then only when the approaching train, running 25 or 30 miles an hour, was about 160 steps away, the death was not the proximate result of negligent failure of the train operatives to keep proper lookout.

5. RAILROADS ⊜367—INJURIES TO PERSONS ON TRACKS — DUTY TO KEEP BUSHES AND WEEDS CUT TO ALLOW LOOKOUT.

In action for death of child killed on track, negligence being alleged both as to lookout and permitting bushes and weeds on the side of the track so as to obstruct train operatives' lookout, the condition of the right of way was important only as an incident affecting the question whether proper lookout was kept.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Cherokee County.

Action by Mrs. Lucy C. Wallace and others against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Appellee's child, about 18 months old, was struck and killed by the appellant's local freight train, and the suit is by appellees for damages, alleging that the death was through negligence of the company (1) in operating and running its train at the speed of 30 or 35 miles per hour; (2) in failing to keep a proper lookout in approaching the place where the child was killed; and (3) in permitting bushes and weeds to grow up by the side of the track so as to prevent its employés operating the engine from seeing any one who might be on or near the track. The defendant answered by general denial and plea of contributory negligence on the part of the parents in permitting the child to be upon defendant's track. In response to special issues the jury findings were (1) that the railway company was guilty of negligence, (2) in failing to keep a lookout for persons on the track, (3) which was the proximate cause of the death of the child, but (4) that the engineer and the operatives of the train did not discover the child in time to stop the train before striking it, and (5) that the appellees were not guilty of contributory negligence. The jury made a finding (7) as to the amount of the damages.

The appellees' home was situated near and on the west side of the appellant's right of way, one mile south of Mt. Selman. About 135 yards south of the house is a private crossing over the track of the railway, placed there by the railway company for the convenience of the landowners on each side of the track. This private crossing is reached on the west through a gate in the fence. The appellant's local freight train, consisting at the time of about seven or eight cars, was going south at about 9:30 o'clock in the morning, and at the point of injury in evidence was running at the speed of 25 or 30 miles per hour. The child was struck and killed by the locomotive about eight or ten feet north of the private crossing. It appears from the bloodstains on the ties that the child at the time was outside of and near the east rail of the track. No witness testifying saw the child prior to the injury at any time at or near the track, or saw the engine strike her. It was shown that after the child was struck the train stopped, the caboose resting on the crossing. The mother of the child testified:

"Just a few minutes before the child was run over by the train she had been in my lap. * * * She was in my lap there in the room just a few minutes before she was run over by the train. * * * She got down out of my lap just before the accident—a short time before."

And this evidence of the mother is all the evidence as to how long the child had been on or near the track, or going in the direction of the right of way or track, before the injury to it happened. It was proven that the track commences to curve inward to the west about 125 steps back from where the child was killed. It was shown that there was considerable undergrowth and bushes on the right of way, on each side of the track, reaching to within two or three feet of the rails. The bushes had grown to the height of eight or ten feet, according to one witness. There were no bushes between the rails. The witness Dublin testified as follows:

"I made observation with another party. * * * We got at the point where the child was killed—where the blood stain was on the cross-ties—and then stepped back up the track between 130 and 160 steps—not over 160 steps —and when we got at that point we looked back towards the point where the child was killed— where the blood stain was on the ties. I have been there when the bushes were there and before they had been cut off. When the bushes were there on the right of way and before they had been cut off you couldn't stand at the point between 130 and 160 steps from the blood stain and see anybody at that place unless they were within five or six feet of the track. At that time and under those conditions you couldn't have seen a child 18 months old back at that point looking to the place the child was killed, until the child had gotten within five or six feet of the track. You couldn't have seen the child back more than five or six feet from the track proper. The bushes and undergrowth would have prevented any one seeing the child until it had gotten within five or six feet of the track."

E. B. Perkins, of Dallas, and Marsh & McIlwaine, of Tyler, for appellant. Perkins & Perkins, of Rusk, and W. J. Townsend, of Austin, for appellees.

LEVY, J. (after stating the facts as above). [1-5] A question made by the assignments is whether or not the evidence in the record in support of the plaintiffs' action for damages is legally sufficient to support the findings by the jury that the death of the child was the proximate result of the negligent failure of the operatives of the train to keep a proper lookout. The blood stains on the cross-ties outside and near the east rail, and at no other place, at a point between eight and ten feet north of the private crossing, would indicate that the child met her death at that particular place. She was then outside of and near the east rail, and not on the track between the rails. The fact that the child met her death at the point mentioned, in connection with the further fact that the train was seen to stop at the crossing, would authorize the inference that the locomotive struck and killed her. In order to reach the ties near the east rail, the child, in coming from the house located on the west side of the track, must have crossed the track at some moment before being struck by the locomotive. But how long she was upon the right of way or near the track in advance of the train does not appear except from presumption. According to the mother's evidence the

child was in her lap in the house "a few minutes before," "just a short time before," the injury. In this "few minutes before" the injury the child, in order to reach the place of injury, would have to walk 135 yards, the distance, it appears, from the house to the crossing. From common knowledge a child of that age may not walk that distance very rapidly. And it appears that the freight train, headed in the direction of the crossing, was running at a speed of 25 or 30 miles an hour. It does not appear from any evidence where the train was "a few minutes before" the injury, but all the circumstances reasonably point to the only inference that the train was fast approaching the crossing at the time the child reached, or very nearly so, the crossing. But there does not appear any evidence to show, or circumstances tending to show, that the operatives of the train saw the child at any time at any point before the injury, except the bare, unexplained fact that the train stopped, the caboose resting on the crossing. This act of stopping the train at the place would indicate that the operatives of the train had tried to stop the train either before actually striking or upon striking the child. And the circumstances are in keeping with the inference that the operatives of the train did not discover the child in time to avoid striking her. The jury in this case even so found. And the operatives of the train could not, it appears, from a point 160 steps from the place where the child was killed, see the child on the right of way, by reason of the bushes, and "until the child had gotten within five or six feet of the track." There does not appear any evidence as to the distance within which the train could be stopped, running as it was at the speed of 25 or 30 miles an hour. A reasonable lookout, varying according to the danger and all surrounding circumstances, to discover infants near or on the track is a duty devolving on those in charge of a moving train. Railway Co. v. Hammer, 34 Tex. Civ. App. 354, 78 S. W. 708. But a failure of the operatives of the train to keep a proper lookout along the track, if they do fail, can only be deemed the proximate cause of the death of an infant near the track when it appears that the keeping of such lookout would have prevented the injury resulting in death. Railway Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049. And here it appears from all legitimate inferences that the child was not discernible by the operatives of the train at any time before she reached a point within five or six feet of the track, and then so near in advance of the approaching train as to render unavoidable her being struck by the locomotive. It cannot be presumed that the operatives failed to keep a proper lookout, but such fact would have to appear by evidence or inference from circumstances. The condition of the right of way is important in the case only as an incident affecting the question as to whether or not a proper lookout was kept by those in charge of the train.

It is concluded that the judgment should be reversed, and, in view of the record, that the cause be remanded, and it is accordingly so ordered.