GULF, COLORADO & SANTA FE RAILWAY COMPANY
V. G. R. RUSSELL.

No. 6388.   Decided May 29, 1935.
Rehearing overruled June 26, 1935.
(82 S. W., 2d Series, 948.)

*B. M. McMahan,* of Greenville, *Terry, Cavin & Mills, G. B. Ross* and *Joyce Cox,* of Galveston, for plaintiff in error.

The contributory negligence of defendant in error debars his right of recovery even though his negligence may not have been the proximate cause of his injury, it being sufficient that it was a proximate cause.   Artusy v. Missouri Pac. Ry. Co., 73 Texas, 193, 11 S. W., 177, Gulf, C. & S. F. Ry. Co. v. Matthews, 100 Texas, 63, 93 S. W., 1068.

*Clark, Harrell & Clark,* of Greenville, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Defendant in error, G. R. Russell, was awarded a judgment against plaintiff in error, Gulf, Colorado & Santa Fe Railway Company, in the District Court of Hunt County for $2875.00 for loss of his left hand. This judgment was affirmed by the Court of Civil Appeals, and a full statement of facts will be found in the opinion. 52 S. W. (2d) 1085. The parties will be referred to as plaintiff and defendant as in the trial court. We briefly summarize the essential facts as follows:

About 8:30 o'clock at night plaintiff left his home in Wolfe City for a walk. He went out beyond the business portion of the town and beyond where Hannah Street crossed the railroad track, which was about one-half mile south or southwest of the depot. Hannah Street is apparently a narrow graded street somewhat wider than the ordinary roadway. It crosses the railroad track in a general direction of east and west. After plaintiff had gone a short distance beyond where the street crossed the railroad track he started back home, and when he came to where the street crosses the railroad, instead of traveling the street and highway back to his home he started down the railroad track towards the depot and the business portion of the town. As to what then occurred we taken the following statement from the testimony of plaintiff himself:

"There is a cattle guard at Hannah Street crossing where I turned to walk on the track. I crossed over the cattle guard and was walking in the center of the track between the rails. In the distance of about three or four steps after I had crossed over the cattle guard I was met and accosted by a man whom I did not know. He said to me, 'Where in the hell are you going?' I replied, 'What in the hell is it to you?' Then several licks passed between us. I made an effort to defend myself. The man hit me on the forehead and on the top of the head with some hard substance which knocked me to the ground. The blow knocked me unconscious and I remained so for a while. I don't know how long I remained unconscious there on the track, but I regained consciousness about the time the passenger train was approaching the crossing. I first heard the noise the train was making and I saw the headlight, but could not tell how close it was to me. I was lying partly across one of the rails and I tried to stand but I was weak and could not make it. I then by efforts pushed and pulled myself off the track the best I could do. The train then reached and passed me and ran over my left hand. After the train passed I was able to get up straight and I went

direct to Mr. Mose Warren's house and waited there until the ambulance came."

The actual place on the rail where plaintiff's hand was crushed, as shown by the blood and flesh on the rail, was according to the testimony of some witnesses about twelve feet from the cattleguard and by the testimony of other witnesses only about fifty-two inches from the north margin of the cattleguard. It seems to be undisputed that the track was straight for a long distance south of the crossing. It appears from actual protographs that the railroad track was not level, by which we mean that the soil did not come to the tops of the railroad ties, but that the ties were some inches higher than the ground on which they lay. It is also shown that grass and weeds were growing between the ties and even above the tops of the ties, and above the tops of the rails of the cattleguard, and also covered the right of way up to the ends of the ties and between the ends of the ties to the rails of the track.

The basis of plaintiff's claim of negligence on the part of the railway company is reflected by the following portion of his pleading:

"That the defendant's railroad track and right of way is perfectly straight for a distance of approximately two miles southwest from said Hannah Street crossing; that the view of said track by the engineer on defendant's locomotive, which was pulling its passenger train at the time mentioned in the preceding portion of this petition, was clear and unobstructed for a distance of approximately two miles southwest from said Hannah Street; that it was the duty of the defendant, its agents and servants operating said passenger train to use ordinary care to keep a proper lookout to discover persons who might be upon said track and especially who might be at or near the public street crossings over which said line of railroad track passed in said City of Wolfe City, and especially to see and discover plaintiff lying upon said track at or near said Hannah Street crossing in the perilous condition which he was in at the time; that if the defendant, its agents and servants operating said passenger train had used ordinary care to keep a proper lookout, they could and would have seen and discovered plaintiff lying upon said track in sufficient time before said passenger train reached the point where he was lying to have checked its speed or to have brought said train to a stop and to have avoided running over plaintiff's hand; but plaintiff alleges that the defendant and its agents and servants in charge of, and operating said passenger train, negligently and care-

lessly failed to keep a proper lookout and to discover plaintiff lying upon its track at said time and place, and that such negligent and careless failure on the part of the defendant, its agents and servants, was the proximate cause of said passenger train running over plaintiff's hand and injuring him as above alleged. Plaintiff alleges and charges the fact to be that the defendant and its agents and servants operating said passenger train, although they could, by the exercise of ordinary care, have seen and discovered plaintiff lying upon the track as aforesaid in time to have checked the speed of said train or brought it to a stop and avoided running over his hand, were not even looking down said track and did not see plaintiff lying on said track or crawling off of said track in an attempt to extricate himself from his perilous condition, but continued to run said train at a rapid rate of speed and did not begin to slacken its speed until it was approaching defendant's depot and did not stop said train until it arrived at said depot, a distance of twenty telegraph poles from the place where plaintiff was run over."

The case was submitted to the jury upon a general charge. As touching the negligent acts necessary to authorize the jury to find in favor of plaintiff, the court, among other things, charged the jury as follows:

"If you further believe that the defendant's agents and employes in charge of the operation of said train as it approached the crossing failed to use ordinary care to keep a lookout for persons who might be on said railroad track at said point; and if you further believe that the plaintiff began to regain consciousness as the train approached said point, and that he undertook to get off said track before the train reached him, and that in trying to do so the train, or some portion of it, ran over plaintiff's hand, crushing it to such an extent that amputation was necessary; and if you further believe that the failure of the employes of the defendant, or either of them, operating said train to use ordinary care to keep a lookout, if they did so fail, was the proximate cause of the train running over the plaintiff's hand, then and in that event you will find a verdict for the plaintiff, and assess his damages according to the rule hereinafter given you, but unless you so believe you will return a verdict for defendant."

Defendant railway company assigns several reasons why the judgment of the trial court and the Court of Civil Appeals should be reversed and judgment rendered in its favor, or the cause be remanded. Some of them are not sound. We may

say in the beginning that there was no evidence whatever tending to show that the railroad track at the place of the injury was used by persons as a place of travel at night, and for that reason defendant owed plaintiff no extra duty in that regard. As was said in the case of St. Louis S. W. Ry. Co. v. Watts, 110 Texas, 106, 216 S. W., 391, the company owed plaintiff no duty as a licensee, but only such duty as was owed to him as a trespasser. Having left the street crossing and entered upon his journey to town upon the railroad track at a point where the public was not accustomed to use it for travel at night, there is no question but what plaintiff when first entering upon the track was a trespasser. Before referring to the matter of the duty owed by defendant to plaintiff it is proper to dispose of the question of contributory negligence.

1 It is well settled by our decisions that one using a railroad track solely for travel, at a point where persons are not accustomed to travel with the knowledge and consent of the company, is guilty of contributory negligence as a matter of law, and is not entitled to recovery, unless there be some circumstance which intervenes to neutralize his negligence as a contributing cause of the injury. This is particularly true when the party chooses a dangerous way in lieu of a safe way, as in this instance. Texas Midland Ry. Co. v. Byrd, 102 Texas, 263, 267, 115 S. W., 1163, 20 L. R. A. (N. S.), 429.

2 But notwithstanding the fact that when plaintiff entered upon the railroad track he was a trespasser, this cannot be regarded as the proximate cause of his injury, because of the intervention of another agency which broke the casual connection. Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 615, 620.

Defendant strongly argues that if plaintiff was a trespasser and at a place where the operatives of the train could not reasonably expect him to be, the Company owed him no duty. Our decisions do not support this contention.

3 It is now the settled law of this State, that a railway company in the operation of its trains owes a general duty of keeping a lookout for persons as well as animals or inanimate objects on its track. This duty of a "reasonable lookout" is a continuing one and is not dependent upon the question of whether or not a person may be wrongfully upon the track at a place where persons are not usually expected to be. It is a duty imposed for the safety of passengers as well as persons who may be upon the track.

Giving application to this rule of duty it is further the

settled law of this State that even though a person be upon a railroad track as a trespasser, the railway company owes him the duty to use ordinary or reasonable care to discover his presence upon the track and to prevent injuring him. St. Louis S. W. Ry. Co. v. Watts, 110 Texas, 106; Texas & Pac. Ry. Co. v. Watkins, 88 Texas, 20; Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 615; Galveston City Ry. Co. v. Hewett, 67 Texas, 479, and Panhandle & C. Ry. Co. v. Haywood, 227 S. W., 347.

As to what may constitute ordinary care under all the circumstances depends to some extent upon the question of whether or not the trespasser was at a place where persons would not reasonably be expected to be, but we do not think this fact can relieve the company from all care or from the duty of the reasonable lookout above mentioned.

It is not true, however, that a railway company is liable for injuries to a trespasser in any and all events because of the breach of the duty of keeping a reasonable lookout. Nor is it necessary for a railroad company to assume the burden of showing that it could not and did not discover the trespasser upon its track. The correct rule was very aptly put in the case of Railway Company v. Sympkins, supra, which was the first case to clearly and definitely prescribe the rule of ordinary care as regards a trespasser. In that case the court said:

"We prefer that line of decisions holding railroads bound to exercise their dangerous business with due care to avoid injury to others, as correct in principle and sound in policy, and as protecting even a trespasser who is not guilty of contributory negligence. We are inclined, however, to the opinion that the charge given by the court in this case may have led the jury to believe that they could only find for defendants should they think that the engineer 'could not and did not discover plaintiff on the track in time to stop, without running over him.' Read as a whole, especially in connection with its final clause, the charge is not erroneous, and may not perhaps have been misunderstood. We call attention to it, because of our opinion that the watchfulness required depends on all the circumstances, having reference to all the duties of the engineer, and that it is for the jury to say whether, under the circumstances, he not only *could,* but *should* have discovered the plaintiff in time to have stopped the train. In other words, that the engineer, had he been exercising that ordinary and proper care which under the circumstances was his duty, *would have discovered* the plaintiff in time."

In the case of Texas & Pac. Railway Company v. Shoemaker, 98 Texas, 451, Judge Williams said:

"The unfitness of the engineer only affects the question as to whether or not a proper watch was kept along the track. The presumption is that there was, and it will hardly do to say that it is overcome by mere proof of the unexplained killing and of the engineer's defective vision. There was also a fireman on the engine who, for aught that appears, could have performed this duty so far as it affected the deceased. But, aside from this, the failure to keep a proper lookout, either from incapacity or other reason, could only be deemed the proximate cause of the deaths when it appeared that the keeping of it would have prevented the unfortunate occurrence and no inference of this fact can be drawn from the evidence."

The correct rule is stated in the case of St. Louis S. W. Ry. Co. v. Wallace, 200 S. W., 178, as follows:

"A reasonable lookout, varying according to the danger and all surrounding circumstances, to discover infants near or on the track is a duty devolving on those in charge of a moving train. Railway Co. v. Hammer, 34 Texas Civ. App., 354, 78 S. W., 708. But a failure of the operatives of the train to keep a proper lookout along the track, if they do fail, can only be deemed the proximate cause of the death of an infant near the track when it appears that the keeping of such lookout would have prevented the injury resulting in death. Railway Co. v. Shoemaker, 98 Texas, 451, 84 S. W., 1049. And here it appears from all legitimate inferences that the child was not discernible by the operatives of the train at any time before she reached a point within five or six feet of the track, and then so near in advance of the approaching train as to render unavoidable her being struck by the locomotive. It cannot be presumed that the operatives failed to keep a proper lookout, but such fact would have to appear by evidence or inference from circumstances. The condition of the right of way is important in the case only as an incident affecting the question as to whether or not a proper lookout was kept by those in charge of the train."

We find from plaintiff's petition he clearly recognized that his cause of action essentially rested upon the fact that if a proper lookout had been kept his perilous position upon the track would have been discovered. After the allegation that the operatives of the train did not keep a lookout he alleged as follows:

"That if the defendant, its agents and servants operating

said passenger train had used orinary care to keep a proper lookout they could and would have seen and discovered plaintiff lying upon said track in sufficient time before said passenger train reached the point where he was lying to have checked its speed or to have brought said train to a stop and to have avoided running over plaintiff's hand."

It is seen therefore that it was essential in this case for plaintiff to not only prove that the railway company's operatives did not keep a reasonable lookout, but to also prove that if such lookout had been kept they could and would have discovered plaintiff in a perilous position on the track in time to have avoided injuring him. Apparently this element of the case was not submitted to the jury and there is in fact no basis in the jury's verdict for a judgment in favor of the plaintiff. As indicated above, the charge of the court authorized the verdict for plaintiff upon the following finding: "If you believe that the defendant's agents and employes in charge of the operation of said train as it approached the crossing failed to use ordinary care to keep a lookout for persons who might be on said railroad track at said point; * * * and if you further believe that the failure of the employes of the defendant, or either of them, operating said train to use ordinary care to keep a lookout, if they did so fail, was the proximate cause of the train running over the plaintiff's hand, then in that event you will find a verdict for the plaintiff, and assess his damages according to the rule hereinafter given you; but unless you so believe you will return a verdict for defendant."

If this were a case where it could be said as a matter of law that plaintiff could and would have been seen while in a position of danger by the operatives of the train if they had been keeping a reasonable lookout, it might be plausibly argued that this instruction and the finding of the jury in response thereto would be sufficient to support the judgment. In our opinion, however, the evidence in this case fails to show that even if the operatives of the train had kept a proper lookout they could or would have discovered plaintiff's dangerous position in time to have prevented injuring him. According to plaintiff's statement he was lying on the ground and his body was only partly on the track. His statement is as follows: "When I came to myself I was on the south rail of the track with my head to the north and inside the rail. When I came to myself, my feet were to the south and my head to the north." There is nothing to show whether his body was between the railroad ties or not. According to his statement he became

conscious before the train reached him, and being unable to rise to his feet he pushed his body by force of his hands from the track and sufficiently far away from the rail that only the fingers of his hand were left upon the rail. He was unable to say how far the train was away when he first began to move his body. His statement was: "The first thing I recall that I saw or heard was the noise the train was making, and the headlight, but I couldn't tell how close it was to me." It was proven that at the time of the injury plaintiff was wearing dark pants and a dark grey coat. It is also proven that the right of way was covered with vegetation from ten to fourteen inches high, and a photograph of the situation shows that this vegetation was growing beside the rails and between the ties. At the time of the accident the train was running thirty-five miles per hour. It appears to be undisputed that it would have been necessary for the engine to be within 300 or 350 feet of plaintiff while his body was across the rail and on the track before he could have been seen and recognized as a man. It is undisputed, however, that plaintiff had pushed his body entirely from the track so that only the fingers of his hand were upon the rail before the train reached him. It is undisputed that the body of a man lying in the vegetation on the side of the track with only the fingers of his hand touching the rail could not be discernible from the engine of the train until the engine was within a very few feet of him. In addition it is undisputed that plaintiff was lying on the ground only a few feet north of the cattleguard, which was between him and the approaching train, and the evidence is that this would have materially interferred with the view from the train.

We have called attention to this state of the proof to show that in the absence of a finding that plaintiff could and would have been seen by the train operatives while in a dangerous position in time for them to have prevented injuring him there is no sufficient basis for a judgment establishing liability against the defendant. We have also made this statement of the evidence to show that there was in fact no sufficient evidence upon which the jury was authorized to base a finding that the operatives of the train did not keep a reasonable lookout. The fireman testified that he kept a careful watch as the train was approaching the street crossing and he did not see plaintiff. It is admitted that the operatives of the train did not know anything about the accident until the next day. The engineer was dead. He was proven to be competent, painstaking and conscientious. It was his duty to keep a lookout required

by ordinary care, and he is presumed to have done his duty in this respect. Railway Co. v. Shoemaker, supra. To overcome this presumption and the direct testimony of the fireman that he kept a lookout, and to sustain the finding of the jury that the employes in charge of the train failed "to use ordinary care to keep a lookout for persons who might be on the railroad track at such point," resort is had solely to the inference that arises from the happening of the accident itself. In other words, it is contended that if the trainmen had been keeping a lookout they could have seen plaintiff in time to have slackened the speed of the train or prevented injury to him, and therefore because they did not see him the jury was authorized to infer that they were not keeping a lookout. As indicated above no such inference could be indulged unless it was shown that plaintiff occupied such a position on the track that he could have been seen by the trainmen at a time when he was still in a perilous position. It is obvious that after plaintiff's body was pushed from the rail of the track and only the fingers of his hand were touching the rail, he could not be seen and his danger realized except from a very short distance, and the proof is silent as to how far the train was away when his body was still upon the track in a position to have been seen. So, in the absence of proof that plaintiff was still upon the track in a position to have been clearly discernible when the train was within 300 to 350 feet of him there can be no basis for the inference that if a lookout had been kept he could and would have been seen. Furthermore it was shown that at the rate of speed the train was traveling it would have reached the place where plaintiff was injured within seven or eight seconds after his body would have been discernible, even while across the rail, as he says it was when he regained consciousness. It is therefore evident that if he had still been prostrate on the track in the position he claims to have been when the train reached a distance of 300 to 350 feet of him, he could not have attempted to get up and failed and then pushed his body from the track by force of his hands so as to be entirely free from the track, except as to the fingers of his hand, within the seven or eight seconds that the train was running the distance of 300 to 350 feet. Thus it may be reasonably inferred that he had in fact practically if not entirely removed his body from the track before the train got within 300 or 350 feet of him; and if so, he was then in a position not to have been seen. Under the circumstances it is apparent that the jury has indulged the presumption or inference that

plaintiff was still upon the track in a position to have been clearly discernible when the train was within 300 or 350 feet of him, and has indulged the further inference that because he was not seen the trainmen were not using ordinary care to keep a lookout. This is not permissible.

We do not think that the evidence was such as to "authorize the inference that the operatives were not using ordinary care to keep a lookout and that they could have seen the plaintiff at or near the crossing if reasonable care had been exercised."

The case in this respect must depend upon the plaintiff's testimony alone, and he has no doubt given the most favorable version of the facts which he is able to give. In this connection it is appropriate to remark that the testimony furnishes no plausible reason why plaintiff, after having removed his body and arm entirely from the track, could not have also removed his fingers from the rail before they were struck by the wheels of the engine.

Under authority of Railway Company v. Shoemaker, supra, we feel justified in reversing and rendering the case.

The judgments of the trial court and of the Court of Civil Appeals are hereby set aside and judgment here rendered in favor of plaintiff in error.

Opinion adopted by Supreme Court May 29, 1935.

Rehearing overruled June 26, 1935.