## THOMPSON v. GRAY et ux.
### No. 12056.

Court of Civil Appeals of Texas. Galveston.
April 7, 1949.

Rehearing Denied April 28, 1949.

Clegg & Clegg, of Trinity, Kelley, Mosheim & Ryan and McGregor & Sewell, all of Houston (Ben G. Sewell, of Houston, of counsel), for appellant.

Burns & Burns, of Huntsville, and Collins, Dies, Williams, Garrison & Renfrow, of Lufkin, for appellees.

MONTEITH, Chief Justice.

This action was brought by J. T. Gray and Dorothy Gray for the recovery from appellant, Guy A. Thompson, Trustee for International Great Northern Railroad Company, of damages alleged to have been sustained as the result of the negligent acts and omissions of appellant's employees and agents in the operation of its train which resulted in the death of their son, Alfred Joe Gray.

The record reflects that on the afternoon of December 8, 1947, the body of appellees' son, twenty months of age, was found beside the defendant's tracks. One of its trains, consisting of 60 cars, had passed along the track at this point a short time before. The child had apparently been killed by a sharp blow across the top of his head from some part of the passing train. There were no eyewitnesses to the occurrence and no evidence that anyone saw the child on or about the railroad track at any time before or at the time the train passed. The engineer and fireman testified that the child was not on or about the tracks at the time the locomotive passed the point where his body was found. The circumstances indicated that the child probably had been struck and killed by some part of a passing train, but there was no evidence as to where he was when he was struck, where he was going at the time or how long he had been at the point where he was struck.

At the place where the child's body was found the track, which is the main line between Houston and Palestine, was straight and level for at least a mile in both directions from this point. The child's parents, appellees herein, lived in a small house on the east side of the tracks about 60 feet from the tracks. The main highway paralleled the right of way on the west side of the track. The right of way was fenced on both sides and appellees had access from their house to the highway either through a gate in the right-of-way fence in front of the house or through the cattle guard located near the gate.

The appellees lived in a two room house with their children, the child who was killed and a three month old child, and Mr. Gray's mother and two grown sisters. About 3:00 o'clock on the afternoon of December 8, 1947, Mrs. Gray discovered for the first time that her son was missing. She discovered the body lying near the railroad track a short distance north of the road that crossed the railroad right-of-way in front of the house.

An undertaker testified that he arrived at the house before the body was moved

and that it was lying about 6½ steps east of the east rail on the side of the tracks where the appellees lived and about opposite their house. He testified that the child's body was not mangled and his clothes were not soiled. There was a clean cut across the top of his head about 3 inches in length extending from the left side of the head to the right side across the top and his skull was fractured above the left ear. The left side of his face was badly bruised, his right hip was torn from its socket and he had a light skin abrasion on the back of his fingers.

There were three marks on the ground on the east side of the track near the place where the child's body was found which indicated that something had hit the ground at that spot. Mr. Gray testified that the first spot was about 1½ feet from the crossing and that the other two marks in the ballast were about 2½ feet apart.

The mother and the grandmother were the last persons to see the child.

The deceased child's mother, grandmother and aunt were in the Gray house at the time the train passed. The mother and grandmother testified that they heard the noise of the train as it approached the crossing, but that they did not hear the bell ring or the whistle blow. A neighbor who livered north of the appellees'. house also testified that the bell was not rung and the whistle was not blown.

The engineer and fireman testified that they were operating a train consisting of a locomotive and 60 cars on the afternoon in question. They testified that the whistle was blown and that the bell was rung for the crossing in front of appellees' house. Both testified that they were looking ahead along the track which was open and level, that there was no obstruction to their view and that they did not see the deceased child at any time, and that they saw no "object, person or thing" in or about appellees' house or on or about the tracks as the train passed the house.

At Trinity about 2½ miles north of appellees' house, the train crew was told that it had been reported that a child's body had been found near the Bell crossing. The fireman testified that he and other members of the crew then made a careful examination of the locomotive to see if the locomotive had struck anything. They could find no blood, hair or skin of any character on the locomotive.

A Southern Pacific Engineer called by appellees testified that the approach to the crossing in question was clear and unobstructed and that one could see even a small object or child on or near the crossing for a distance of one-fourth of a mile. He testified that the length of the locomotive and 60 cars was a little over half a mile.

At the conclusion of appellees' evidence, appellant moved for an instructed verdict, specifying as grounds therefor that the appellees had offered no evidence as to the cause of the fatal injury sustained by Alfred Joe Gray; that they had offered no evidence of any probative value that the appellant, or any agent, servant or employee of the appellant, acting in the course and scope of his employment was guilty of any act or omission which proximately caused the fatal injuries to the said Alfred Joe Gray, or any evidence that this appellant or any of its agents, servants, or employees acting in the course or scope of his employment was guilty of any act or omission of negligence which proximately caused the fatal injuries sustained by the said Alfred Joe Gray. This motion was overruled.

In answer to special issues submitted, the jury found that the engineer and fireman failed to keep a proper lookout; that the engineer failed to sound the whistle on the locomotive at a distance of at least 80 rods from the place where the railroad crossed the road and that such failures were the proximate causes of the child's death.

They found that the child's parents were not guilty of contributory negligence; that his death was not the result of an unavoidable accident and that the various acts of the child inquired about, were not new and intervening causes or the sole proximate cause of his death. The jury assessed damages at $4,735.22 and judgment was rendered in favor of appellees in accordance with the jury's verdict.

Appellant contends that, while there may have been sufficient evidence to raise the

issues of negligence as to proper lookout and failure to sound the whistle, the vital issue presented in the appeal is the question of causation of the injuries complained of and that the burden of establishing by competent evidence a causal connection between its alleged negligence and the child's death was on appellees. Appellant contends and the record, we think, reflects that there is no evidence as to how or when the child came on the railroad track; that when he was last seen by any one he was in the house, a safe distance from the tracks, and that the failure of appellant's agents to keep a proper lookout or to sound the whistle could only have been a proximate cause of the child's death if and when it was shown by competent evidence that such negligence, if any, was a cause in fact of the child's death; and where there was proof that by keeping such a lookout or by sounding the whistle and ringing the bell the child's death could have been prevented.

The Supreme Court of this state has, under a similar state of facts, announced the rule that " * * * a failure of the operatives of the train to keep a proper lookout along the track, if they do fail, can only be deemed the proximate cause of the death of an infant near the track when it appears that the keeping of such a lookout would have prevented the injury resulting in death." Gulf, C. & S. F. Ry. Company v. Russell, 125 Tex. 443, 82 S.W.2d 948, 952.

In the Russell case the fireman testified that he kept a careful watch as the train was approaching the street crossing and that he did not see plaintiff. It was admitted that the operatives of the train did not know anything about the accident until the next day. The engineer, who was dead at the time of the trial, was proven to be competent and conscientious. It was his duty to keep a lookout required by ordinary care and that, in the absence of proof to the contrary, he was presumed to have done his duty in this respect. Citing Texas P. & Railway Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049. It was contended in that case that if the trainmen had been keeping a lookout they could have seen plaintiff in time to have prevented injury to him and that therefore the jury was authorized to infer that they were not keeping a lookout. The court in its opinion said [125 Tex. 443, 82 S.W.2d 953] " * * * As indicated above, no such inference could be indulged unless it was shown that plaintiff occupied such a position on the track that he could have been seen by the trainmen at a time when he was still in a perilous position."

In the case of Texas P. & Railway Co. v. Shoemaker, supra, plaintiffs, suing for the death of their two sons, proved that their mangled bodies were found near the defendant's railroad track between the point where it was crossed by two frequently used foot paths. There was evidence that there was blood on the pilot of one of the defendant's engines that had passed the point where the two bodies were found, and that the vision of the engineer of the train was defective. Judge Williams, speaking for the court, in his opinion said [98 Tex. 451, 84 S.W. 1051] " * * * But upon this question of proximate cause, in our opinion, the case hopelessly fails. No one can say from the evidence that the boys were at the crossing, or that the failure to give the signals had anything to do with the deaths. * * * But, aside from this, the failure to keep a proper lookout, either from incapacity or other reason, could only be deemed the proximate cause of the deaths when it appeared that the keeping of it would have prevented the unfortunate occurrence, and no inference of this fact can be drawn from the evidence. What were the boys doing as the train approached them? How long were they on the track before they were struck? What was their position? An answer to these questions must be found before it can be said that there was a failure to keep a proper lookout, and that such a lookout would have discovered them in danger in time to have enabled those controlling the train to have saved them; and for such answer the evidence may be searched in vain. This fact of causal connection between an alleged negligent act or omission and an injury can no more be presumed than can the act or omission itself."

In the case of Texas & N. O. Ry. Co. v. Zarate, Tex.Civ.App., 74 S.W.2d 721, 726, writ of error refused, the body of the deceased was found near the railroad track under circumstances indicating that he had been struck by a train. There were no witnesses to the accident. The only issues of negligence submitted to the jury was whether there was a failure to keep a proper lookout which the jury answered affirmatively. The track was straight and there was nothing to obstruct the view along the right-of-way for a long distance in the direction from which the train approached. The engineer testified that he was keeping the lookout and he did not see any one along the right-of-way at the place in question, that he would have seen a man if he had been along the tracks and that he did not know that the train struck any one until he reached Houston the next morning. The fireman corroborated the engineer as to keeping the lookout.

In reversing and rendering the case, the court said that while the appellant owed the deceased the duty of keeping a proper lookout to discover him in time to avoid injuring him, " * * * There is not one fact or circumstance in the record to warrant any reasonable inference that the operatives of the train could have discovered the deceased in time to avoid injuring him if they had been keeping a lookout. For aught the record shows he may have walked into a place of danger near the track at a time when the train was so near it could not have been stopped. Or he may have gotten up and fallen into the side of the train after the locomotive had passed. The evidence does show that when struck he was on the north or engineer's side of the track and that he was struck a glancing blow possibly by some projecting portion of the train."

In the case of Webster v. Henwood, Tex. Civ.App., 134 S.W.2d 333, 334, no w. e., the deceased was alleged to have been killed while attempting to cross the defendant's track at a public crossing because of the negligent manner in which defendant's switch engine was being operated, the Waco Court of Civil Appeals, speaking through Judge Alexander, said " * * * For the sake of the discussion, it may be

assumed that the evidence was sufficient to have justified an inference that Webster was struck by defendant's switch engine, and that the employees in charge thereof were negligent in failing to sound the whistle or ring the bell, but we are left wholly in the dark as to how the accident ocurred. There was no evidence whatever that such negligence, if any, on the part of the defendant was the proximate cause of the accident. The burden was on the plaintiff to not only prove the negligence of the defendant, but that such negligence was the proximate cause of the injury, for there is no presumption that the negligence proven was the proximate cause of the injury. * * * Where the facts and circumstances in evidence thus wholly fail to establish with any reasonable certainty the manner in which the accident occurred, a jury would not be authorized to presume that it resulted from the defendant's negligence in failing to ring the bell or sound the whistle. Texas & N. O. Ry. Co. v. Warden, 125 Tex. 193, 78 S.W.2d 164. The vital point is that the plaintiffs wholly failed to establish any causal connection between the defendant's alleged negligence in failing to ring the bell and sound the whistle and the injury to the deceased. Since proximate cause cannot be presumed from the mere happening of the accident, but, like any other essential element, must be established in some manner, either by direct or circumstantial evidence, and since the plaintiffs wholly failed to meet this essential requirement, the trial court properly instructed the jury to return a verdict for the defendant." (Citing numerous cases.)

In the case of Campos v. St. Louis, B. & M. Ry. Co., Tex.Civ.App. of San Antonio, 43 S.W.2d 487, no w.e., under set of facts similar in many respects to the facts in the instant case, the court said "So the most the record shows is that appellee's train killed Campos, and that the train operatives negligently failed to sound the whistle or ring the bell for the crossing near which the accident happened. These two findings are not sufficient to establish the liability of appellee for the death of Campos. The burden of proof was upon appellant to show, not only that decedent lost his life

by an act of appellee's servants, and that the servants were negligent in failing to sound the whistle and ring the bell as the train approached said crossing, but that these negligent acts had some causal connection with the accident, and were the proximate cause of the resulting injury."

In the recent case of Westbrook v. Texas & P. Ry. Co., Tex.Civ.App., 203 S.W.2d 279, 283, w.e.r.n.r.e., plaintiffs sued for damages for the death of a two year old child allegedly killed by the defendant's train. There were no eyewitnesses. The child's parents lived some 78 yards south of the railroad tracks. The deceased child's mother testified that she was in her home at the time the train in question passed the crossing and that she did not hear the whistle blow or the bell ring and that had they been sounded she would have heard them. The court in holding that the trial court had properly instructed the verdict for the defendant in its opinion said " * * * But for the purpose of this discussion, we may assume that no alarm was given. Then appellants had the burden of establishing by competent evidence a causal connection between such negligence and the fatal accident. It is not enough merely to prove negligence on the part of the wrongdoer. The complainant must go farther and prove proximate cause. Here again, the record is silent as to direct proof, or as to circumstantial evidence sufficient to support a finding of proximate cause. Furthermore, there is no evidence as to the alleged failure of the operators of said train to keep a proper lookout. Neither of the witnesses saw the train in motion before the accident and were, therefore, unable to testify to any act of omission on the part of the train crew."

Appellees rely upon the case of Missouri-Kansas-Texas R. Co. v. Sanderson, Tex.Civ.App. of Eastland, 174 S.W.2d 646, w.e. refused n.r.e., in which under a similar set of facts the railroad was held responsible for damages for the death of a two year old child. While the facts in the Sanderson case are similar in many respects to the instant case, the case is, we think, in direct conflict with the opinions of Courts of Civil Appeals and the Supreme Court in which writs of error were refused.

 In view of the above announced rules by the courts of this state, appellees have, we think, failed to prove that the negligence of appellant's agents and servants in operating its train was the proximate cause of the death of appellees' child and that the judgment based on such findings must of necessity be based on conjecture and surmise. It follows, that the judgment of the trial court must be reversed and the cause here rendered in favor of appellant.

Reversed and rendered.