**Armando GAONA, Appellant,**

v.

**Elizabeth PASTOR, Appellee.**

**No. 893.**

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 31, 1974.

Robert L. Galligan, Rankin, Kern & Martinez, McAllen, for appellant.

Asa V. Bland, Jr., Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, for appellee.

OPINION

BISSETT, Justice.

This is a suit for damages resulting from an automobile-pickup truck collision on Highway 83, in Hidalgo County, Texas. Mr. Armando Gaona sued Mrs. Elizabeth B. Pastor for personal injuries and property damages sustained in the collision between a passenger car driven by him and a pickup truck driven by her. Trial was to a jury. A take nothing judgment was rendered against plaintiff, who has appealed.

The jury found that plaintiff failed to steer his vehicle to the right of defendant's truck (Special Issue 12), which was negligence (Special Issue 13), and a proximate cause of the accident (Special Issue 14); and, that plaintiff failed to keep a proper lookout (Special Issue 15), which was a proximate cause of the collision (Special Issue 16).

Plaintiff, in points 1, 4, 7, 10, and 13, challenges the submission of Special Issues 12 to 16 on the ground that there is no evidence to support an affirmative answer to those issues. In point 16, plaintiff contends that there was no evidence to support the jury's answers to those issues.

■ A "no evidence" point presents a question of law, and in deciding that question, we must consider only the evidence and the inferences tending to support the jury finding and disregard all evidence and inferences contrary thereto. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup. 1965). We, therefore, review the evidence and the inferences reasonably drawn therefrom in the light most favorable to defendant with respect to both the submission of Special Issues 12 to 16 and the jury's answers thereto, and we disregard all evidence and inferences to the contrary.

The facts set out in this paragraph are undisputed. The collision in question occurred on U. S. Highway 83, in Hidalgo County, Texas, on November 6, 1972, at about 7:15 p. m. The highway extends east and west and, in the immediate area of the accident, consists of three traffic lanes, each 10 feet wide. The north lane carries westbound traffic; the south lane carries eastbound traffic; the center lane is a passing lane and also a turning lane for vehicles turning to their left. Immediately preceding the collision, plaintiff was travelling east in the south lane, and defendant, who had been proceeding west in the center lane and who intended to turn to her left across the south lane into a private parking lot of the West Gate Drive Inn, was stopped on the highway. Her vehicle, in its stopped position, angled slightly from the center lane in a southeasterly direction into the south lane, and was partly in the center lane and partly in the south lane. The point of impact was in the south lane and 114 feet east of the intersection of the highway with Ware Road, a road which crossed the highway in a north-south direction. Plaintiff's car laid down 34 feet of skid marks before it collided with the pickup. The skid marks were all in the south lane. There is a shoulder, 10 feet in width, south of and adjacent to the south lane. The left front bumper and left front headlight of the pickup was damaged in the collision, and the left side of the car in the area from the left front door to the left rear door was damaged.

Defendant was asked to tell the jury everything that she saw and did from the first time she saw plaintiff's car until the accident occurred. Her response was:

"Well, I was going on Highway 83 in the middle lane, and I was doing around thirty miles an hour and I put my signal light on indicating a left turn, and I saw this car coming. I saw the lights, so, I put the clutch and the brake on and I put the gear shift in neutral and turned to my left to the parking lot to see where I was going into, and by the time I looked back to the road again, the car was right—it was sliding right in front of

me, and then I—Well, I saw the car hit me. . . ."

She further testified that her pickup was completely stopped when the left rear of plaintiff's car struck the left front of her vehicle; and that she had been stopped "for a matter of a few seconds". She stated that the left front of her pickup, at the time of impact, was about five inches into the south lane. She also said that when she first saw plaintiff's car, it was about a block to the west of the intersection of Ware Road with the highway, and that the accident happened less than a block east of that intersection.

Plaintiff testified that he was driving "45 or 47 miles an hour" east in the south lane of traffic. When asked on direct examination to tell the jury exactly what he saw and what he did, he replied:

"I was going east on 83 towards McAllen when I saw this pickup truck coming in the middle lane, and I don't know that—I didn't know that she was going to make a left turn, or anything. I didn't have any idea at all."

He did not remember whether or not defendant's pickup had a signal light blinking to indicate a left turn, whether or not the headlights of the pickup were on as the two vehicles were approaching each other, or whether or not he lost control of his car. On cross examination, he was asked:

"All right. Now, you told the jury that you looked down the road and you saw this truck but you don't remember anything other than the next thing you know is that the truck was right on your window so to speak; is that correct?"

To which he answered:

"That is correct."

Mr. Ramiro Amaya was an eyewitness to the accident. He was in the West Gate Drive Inn at the time of the occurrence in question, heard "tires squeal", looked out a window, saw plaintiff's car begin "to weave", and observed the actual collision. He demonstrated to the jury the manner in which plaintiff's car was turned as it was sliding along the highway immediately preceding the collision. He stated that plaintiff's car hit defendant's pickup, and that defendant's pickup was stopped in the middle lane at the time and place of the accident.

█ Taking into consideration all of the evidence and the inferences therefrom that are favorable to the jury findings relating to plaintiff's contributory negligence, and disregarding all evidence and inferences contrary thereto, we are of the opinion that there was some evidence to support both the submission of Special Issues 12 to 16, and the jury's answers thereto. The jury was warranted in finding that plaintiff failed to steer his car to the right, which was negligence, and a proximate cause of the collision; and that plaintiff failed to keep a proper lookout, which proximately caused the accident.

It is established by defendant's testimony and that of the witness Amaya that plaintiff's car struck defendant's pickup when the pickup was completely stopped on the highway. Defendant had been stopped for a few seconds immediately before the impact. Prior to bringing her vehicle to a complete stop, defendant had been proceeding westward in the turning lane, but she was not in the actual process of turning when the accident occurred. There is no evidence that defendant, at any time while she was in the center lane suddenly turned left into the south lane or did anything to indicate that she was going to turn in front of plaintiff's car. On the contrary, when all of the evidence is analyzed, the inferences are that defendant, while still in the center lane, activated the vehicle's left turn signal, disengaged the clutch of the pickup; shifted the gears into neutral, and brought her vehicle to a complete standstill some several seconds before the collision, and while plaintiff's car was a considerable distance away.

According to defendant, whose testimony was not disputed by plaintiff, after she brought her vehicle to a stop, its position angled across the line that separated the south lane from the center lane of the highway. The left front of the pickup was no more than five inches into the south lane when it was hit. It necessarily follows that the right front and all of the rear portion of the pickup was in the center lane at the time of the occurrence in question. There was plenty of room to the south of the pickup and in the south lane for plaintiff to have passed. Considering the fact that plaintiff's car was sliding and its left rear struck the left front of the pickup, it is evident that had plaintiff turned his car slightly to the right that he would have missed the pickup.

Moreover, in addition to the portion of the south lane south of the pickup (9 feet 7 inches in width), there was a shoulder, 10 feet wide, that adjoined the south lane. There is no evidence that either the remaining portion of the south lane or any part of the shoulder was obstructed in any manner that would have prevented plaintiff from turning to his right in safety. The fact of the collision itself shows that plaintiff did not steer his car to the right. Under the evidence and the inferences reasonably drawn therefrom, the jury could have decided that plaintiff did not steer his vehicle to the right, which was negligence, and a proximate cause of the accident.

Both defendant and plaintiff testified that each saw the other's vehicle as the two were approaching each other. Both vehicles' headlights were burning. Apparently, plaintiff did not keep the pickup in view at all times during the interval that elapsed from the time he first saw defendant's pickup since he testified that after he first saw it the next thing he knew was that the pickup was right on his window. That is all that he remembered about the accident. There is no evidence of any obstruction in the highway that impaired plaintiff's field of vision, or that there was anything which prevented him from keeping the highway in full view at all times pertinent to the collision. That fact, of itself, is not direct evidence of failure to keep a proper lookout, but it is a circumstance which aids in establishing such failure.

■ Negligence, causation, and lookout, like any other ultimate fact, may be established by circumstantial as well as by direct evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

■ The pickup was at a complete stop before plaintiff's car went into the skid. It is apparent that plaintiff did not see the pickup when defendant first stopped. However, he was not entitled to close his eyes to that which was plainly visible. The accident was obviously caused by the fact that plaintiff suddenly thought that his right of way would be violated to the point that it became necessary to take evasive action by the application of his brakes, which caused him to skid into the pickup. Such apprehension and action arose, not because of anything that defendant did in a sudden manner, but simply because plaintiff was not looking down the highway; otherwise, he would have seen the left turn light when defendant activated the left turn signal on the pickup and would have seen defendant when she stopped on the highway at the place she did stop. Had he been keeping a proper lookout, he would have realized that defendant, by signalling a left turn, intended to turn to her left out of the turning lane, and by stopping, did not intend to make such a turn until after plaintiff had passed. There is no evidence that defendant did anything that caused plaintiff to believe that his right of way was about to be violated. The exact time when plaintiff should have become aware of the fact that defendant had stopped is necessarily a question for the trier of fact, the jury in this case. Ordinarily, proper lookout is a question for the jury. Texas

& Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946).

It was entirely foreseeable that a person, such as defendant, in the turning lane and who intended to turn left at the place where defendant intended to turn, would stop in the turning lane before actually making the turn. Plaintiff's car hit defendant's truck, and not the other way around. But for the failure of plaintiff to keep a proper lookout, the accident would not have occurred. Gulf, C. & S. F. Ry. Co. v. Russell, 125 Tex. 443, 82 S.W.2d 948 (1935). There is evidence to justify the submission of the challenged issues relating to plaintiff's failure to keep a proper lookout and to sustain the jury's answers thereto. Plaintiff's "no evidence" points are overruled.

Plaintiff, by proper points of error, also contends that it was error to submit Special Issues 12 to 16, because the evidence is factually insufficient to support an affirmative answer to such issues, and because an affirmative answer thereto would be against the great weight and preponderance of the evidence. Similar complaints are brought forward with respect to the jury's answers to those issues. We, therefore, are required to review, weigh, and consider all of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The only other witness who testified to matters concerning the accident was Mr. Roberto Ramos, a police officer. He did not see the accident itself, but did investigate the same. He testified that the point of impact was 114 feet east of the intersection of Ware Road with Highway 83, 7 feet north of the south curb line of the south lane of the highway, and 3 feet south of the center lane. He stated that plaintiff's car laid down 34 feet of skid marks before it collided with defendant's pickup. He said that defendant told him that she never saw plaintiff's vehicle and "she just turned left", and that plaintiff told him

that when he saw the pickup "westbound in the middle lane turning left in front of him", he then applied his brakes and veered to the right, and the left front of the pickup struck the left side of his car. He concluded that defendant's pickup struck plaintiff's car.

Some of the statements made by Officer Ramos contradict statements made by other witnesses, and related to facts which could have justified findings for plaintiff on the issues of contributory negligence. Fact issues were presented for determination by the jury. The weight of the testimony of all witnesses was for the jury. The evidence in this case is factually sufficient to support the submission of Special Issues 12 to 16. The jury's answers to those issues are not against the great weight and preponderance of the evidence. Plaintiff's "factual insufficient evidence" and "against the great weight and preponderance of the evidence" points are overruled.

The jury also found that defendant failed to keep a proper lookout (Special Issue 1), which was a proximate cause of the accident (Special Issue 2); that she failed to maintain her vehicle completely within the center lane of the roadway (Special Issue 5), which was negligence (Special Issue 5-A), and a proximate cause of the collision (Special Issue 6); and that she turned her vehicle to enter a private parking lot and crossed into the south lane of U. S. Highway 83 when it would not have appeared to a person using ordinary care that such movement could be made with safety (Special Issue No. 7), which was a proximate cause of the occurrence in question (Special Issue 8). The jury further found that plaintiff maintained his car in the south lane (Special Issue 9), and that he was not driving his car at an excessive rate of speed prior to the accident (Special Issue 17).

Plaintiff, in his point 19, asserts that there is a fatal conflict between the an-

swers to Special Issues 12 to 16 and the answers to Special Issues 1, 2, 5–A, 6, 7, 8, 9 and 17 that precludes the rendition of judgment. While plaintiff does not specifically incorporate Special Issue 5 in his point of error, the statement and argument under the point clearly makes that issue part of his point. We so consider it.

Plaintiff argues that the only evidence to support the answers to the issues relating to his contributory negligence must be based on the testimony of the witness Amaya, but the jury, contrary to his testimony, found: 1) defendant failed to keep her vehicle completely within the center lane and that she crossed into the south lane when it would not have appeared to a person using ordinary care that it could have been made in safety; 2) defendant failed to keep a proper lookout; 3) plaintiff maintained his vehicle in the south lane; and 4) plaintiff was not travelling at an excessive rate of speed. We disagree with plaintiff's contention. There was other evidence in the record. In addition to the testimony of the parties there are pictures of the area of the accident in evidence as well as a drawing by defendant wherein she located the positions of the car and the pickup at various times.

■ The most that we have in this case is conflicting evidence, which create fact questions to be resolved by the jury. There is no fatal conflict in the answers of the jury to the issues submitted. There are no mutually destructive findings made by the jury. In short, the jury verdict is composed of only basic findings of primary negligence on the part of defendant, and basic findings of contributory negligence on the part of plaintiff, each of which was a proximate cause of the accident. The trial court properly entered a take nothing judgment. Plaintiff's point 19 is overruled.

The judgment of the trial court is affirmed.