## MOLINE TIMBER COMPANY *v*. TAYLOR.

### Opinion delivered May 31, 1920.

1. MASTER AND SERVANT—CONDITION OF MACHINERY—INSTRUCTION.— In an employee's action for injuries received while operating a band cut-off saw which ran through a slot in a table, an instruction with reference to the broken condition of a guide above the table was not abstract where there was evidence tending to show that the broken condition of the guide gave the saw more play and made it more dangerous to operate.

2. MASTER AND SERVANT—ASSUMPTION OF RISK.—In an employee's action for injuries received while operating a band cut-off saw, where the foreman on Saturday morning promised to repair a broken guide "as soon as he could," it was a question for the jury whether plaintiff assumed the risk in going to work on Monday morning without the repairs having been made.

3. MASTER AND SERVANT—EFFECT OF PROMISE TO MAKE REPAIRS.—The effect of a promise to repair, and of a reliance by the servant thereon, is to create a new stipulation whereby the master assumes the risk impendent during the time specified for repairs to be made; and where no definite time is specified in which the repairs are to be made, the suspension of the master's right to avail himself of the defense of assumption of risk by the servant continues for a reasonable time.

4. PARENT AND CHILD—RIGHT OF CHILD TO RECOVER FOR INJURIES.— In an action by a minor servant to recover for personal injuries, an instruction authorizing the servant to recover for loss of time from date of injury was not erroneous where the father had emancipated his son, nor where the father had estopped himself to claim his minor son's wages by suing as next friend of his son.

5. ESTOPPEL—PARENT SUING AS NEXT FRIEND OF CHILD.—A father who sues the employer of his infant son as next friend of the latter for loss of wages caused by ·personal injuries is estopped from claiming anything on account of loss of plaintiff's services.

6. APPEAL AND ERROR—GENERAL OBJECTION TO INSTRUCTION.—A general objection to an instruction that is not inherently erroneous is insufficient.

7. DAMAGES—WHEN EXCESSIVE.—An award of $12,500 to a youth having an expectancy of forty-three and a half years who had previously been earning $4.25 a day and had earned only $2.25 a day since his injury *held* excessive for the loss of two fingers and a portion if his left hand, and judgment reduced to $8,000.

Appeal from Hempstead Circuit Court; *James S. Steel*, Judge, on exchange; modified and affirmed.

*Gaughan & Sifford* and *T. D. Wynne*, for appellant.

1. There was error in the instructions given for plaintiff and in refusing those asked for defendant. No. 1 for plaintiff was abstract and prejudicial. 87 Ark. 471, 243; 135 *Id.* 330. Instruction No. 2 for plaintiff ignores the testimony of the plaintiff himself that he understood that when the promise was made by the foreman to repair the machine that the repairs would be made by Monday morning.

2. The instruction as to the measure of damages was inherently incorrect. 65 Ark. 619.

3. It was error to refuse the instruction asked by defendant. The testimony presented an issue of fact for the jury. 31 Ark. 684; 52 *Id.* 45; 14 R. C. L. 75; 126 S. W. 106; 31 L. R. A. (N. S.) 1131; 8 S. W. 252.

4. The verdict is excessive. 193 S. W. 793; 106 Ark. 177; 89 *Id.* 522.

*D. D. Glover* and *Pace, Campbell & Davis,* for appellee.

1. There is no error in the instructions given. 57 Ark. 203; 87 *Id.* 243; 54 *Id.* 151; 81 *Id.* 327; 90 *Id.* 326. Identical instructions have been approved by this court. 86 Ark. 507; 90 *Id.* 555; 130 *Id.* 542. It was for the jury to say under the evidence whether or not plaintiff was

guilty of contributory negligence. 174 N. Y. 385; 100 U. S. 213.

2. The evidence shows that appellee was permitted by his father to do business for himself and receive his own wages, an implied emancipation, and entitled appellee to recover for the pecuniary loss resulting from his diminished earning capacity. 77 Ark. 35; 91 *Id.* 122; 16 L. R. A. 154; 86 S. W. 486. Instruction No. 2 was not specifically objected to. 110 Ark. 117; 103 *Id.* 584-9.

The verdict is not excessive. 170 N. W. 461; 48 App. D. C. 364.

SMITH, J. Appellee sustained an injury while operating a band cut-off saw in appellant's saw mill. The saw ran through a slot in a table having an iron apron. On top of the iron apron was a board fifteen or eighteen inches wide and six or seven feet long, through which the cut-off saw ran through a slit or groove corresponding with the slit or groove in the iron apron of the table, and appellee claims that his injury was due to the fact that the board on top of the table was defective, in that it had cupped up and had split for a distance of several inches, and that there was a broken guide above the table, which gave the saw too much play, and that on account of the broken condition of this guide the saw had cut out a space where it went through the table larger than it had originally been, thereby giving the saw more play and making it more dangerous to operate.

Appellee was only eighteen years old at the time of his injury, yet he was an experienced and skillful saw mill man, and had worked in various departments of the mill. He had been engaged at the table at which he sustained his injury only a few days, yet he discovered its dangerous condition, and reported that fact to Anderson, his foreman. Appellee testified that the attention of the foreman was called to the defective and dangerous condition under which the saw was being used on Saturday morning, and the foreman promised to repair the defect as soon as he could, and appellee relied

upon this promise and continued in the service. On the following Monday morning appellee reported for duty, and went to work at the table in question, and between nine and ten o'clock that morning received the injury to compensate which this suit was brought. The injury resulted in the loss of appellee's little finger, and the one next to it, and the loss of half that hand down to the wrist joint.

Appellant saved exceptions to the instructions which were given, and also to the refusal of the court to give other instructions which it requested.

The first instruction given recited the alleged cause of negligence upon which a recovery was asked. It is conceded that the instruction correctly declared the law as an abstract proposition; but it is contended that it was error for the court to instruct with reference to the broken condition of the guide, for the reason that if the guide was in a defective condition, that fact had nothing to do with the injury.

But appellee testified that the absence of the guide had caused the saw itself to cut out a place possibly three-quarters of an inch wide at a place which was properly just a crack, and had cut a hole nearly twice as long as the saw was wide, and that the saw thus had a vibration or play which made its use dangerous. The operator of this saw stood in front of the table and pushed the dimension stuff he was sawing up against the saw, using both hands in doing so, and appellee was thus employed when he was injured. The objection that the instruction was abstract does not, therefore, appear to be well taken.

It is very earnestly insisted that the court should have told the jury that appellee assumed the risk of operating the machine and should have given a requested instruction to that effect, and that error was committed in so modifying the instruction as to submit that question to the jury. This instruction was based upon the premise that, even though the foreman had promised to repair the defect in the machine, yet if appellee under-

stood these repairs were to be made before he resumed work on Monday morning, and that the repairs were not so made, and that he knew that the defect of which he had complained still existed when he went to work Monday, that he assumed the risk of operating the machine in its then existing condition.

The theory of the instruction as requested was that the time had expired during which appellee would be relieved of the assumption of risk on account of the promise to repair. It is true that appellee did say that he understood the repair would be made by Monday; but he did not say that the foreman had promised the repair would be made by Monday. His testimony on that point, when amplified, was that the foreman had promised to make the repair as soon as he could, and that he supposed it would be made by Monday morning; but he still expected the repairs would be made and went to work under that assumption. He also testified that the foreman "told me just as soon as he could get to it; that he was in a rush and he couldn't shut the machine down then; for me to go ahead, and he would do it just as soon as he could."

The modification of the instruction was not improper, because, without the modification, the instruction would have told the jury that there was no suspension of the assumption of risk beyond Monday morning, whereas if appellee was still relying upon the promise to repair, and had the right to do so, then it could not be said, as a matter of law, that there was a suspension of the assumption of risk, and the modification properly submitted that question of fact to the jury.

We have many cases discussing the effect of the master's promise to repair, but nowhere is the law stated more clearly than in the case of *St. L., I. M. & S. Ry. Co.* v. *Holman,* 90 Ark. 565, where it was said: "The effect of a promise to repair by the master, and of the continuance in his service by the servant, in reliance upon the promise, is to create a new stipulation whereby the master assumes the risk impendent during the time

specified for the repairs to be made. Where no definite period is specified in which the given defects are to be remedied, the suspension of the master's right to avail himself of the defense of assumption of the risk by the servant continues for a reasonable time.''

Nor can it be said as a matter of law that if Monday morning was not the definitely specified time within which the promise to repair was to be complied with appellee would not have a right for a longer period of time to rely on that promise. Only one full day had intervened between the time the promise was made and the occurrence of the injury, and that day was Sunday, and was not a working day at the mill.

An instruction on the question of the measure of damages permitted appellee to recover for the loss of time from the date of his injury, the objection now urged to the instruction being that appellee, at the time of his injury, was still a minor, and that appellee's father was entitled to these earnings during the remaining period of appellee's minority. It appears, however, that appellee had been emancipated by his father, and for more than a year had been allowed to collect and to appropriate his earnings to his own use. But, however that may be, the father brought this action as next friend of his son, and the instruction complained of directed the jury to assess compensation for any loss of time or diminished earning capacity from the date of the injury, and the father would be and is thereby estopped from claiming anything on account of appellee's services. *Mo. Pac. Ry. Co.* v. *Block,* 142 Ark. 127; *Baker* v. *Flint & Pere Marquette Ry. Co.,* 16 L. R. A. 154. Moreover, the objection to the instruction in the court below was a general one, and, as it is not inherently erroneous, the reversal of the judgment would not be required because it was given.

It is finally insisted that the judgment recovered is excessive; and we agree with counsel in this contention. The judgment was for $12,500. No other error appears in the record, and that error may be cured by the reduc-

tion of the judgment. It is always a difficult question. for us to determine to what extent a judgment should be reduced which we regard as excessive; but we think the present record presents a case in which that action should be taken. Appellee lost two fingers and a portion of his hand, and for a period of seven weeks was under the constant treatment of a physician, during which time he necessarily suffered much pain and sustained a total loss of earnings. Prior to his injury, which occurred on February 3, 1919, he earned $4.25 per day, and since his injury he had been able to earn only $2 per day. Necessarily there is a tenderness which may for some time yet to come prevent appellee from doing kinds of labor which he may later on be able to perform, and there will always be a diminished capacity to perform labor; and the disfigurement is also permanent. The trial in the court below occurred on October 20, 1919. But the case is not that of a man who has lost a hand. Appellee still has his thumb and his two principal fingers, and he will be able to do many things with that hand which do not require much gripping power or great strength which he could not do without the three fingers he still has. Appellee was a right-handed man, and the injury occurred to his left hand. We think under all the circumstances a judgment for $8,000 will fairly compensate the injury sustained, and the judgment will be reduced to that sum, and as thus modified will be affirmed.

Mr. Justice HUMPHREYS dissents from that part of the opinion reducing the judgment.

HUMPHREYS, J. (dissenting). Appellee, C. W. Taylor, began to work for appellant when a mere school boy, working at odd times and on Saturdays. He showed so much aptitude for that character of work, the foreman suggested that he quit school and adopt the mill business as his life's work. He gave up his education and became a regular employee in appellant's company. He became skilled in the use of machines of all kinds in the mill and was advanced until, at the time of his injury, he was re-

ceiving $4.25 a day, and was in line for promotion. His expectancy was forty-three and a half years. His injury wholly incapacitated him for the character of work he had theretofore been doing. He was re-employed and made an effort to carry on his old work, but was compelled, on account of the character of the injury, to give it up entirely and take up a different character of labor, from which he was able to earn $2 per day as a maximum amount. His actual loss, therefore, was $2.25 per day. Figured upon this basis on an expectancy of forty-three and a half years, the present value of his earning capacity is $12,275. His injury was a severe one, causing him much pain and anguish of mind. The condition in which his hand is left will necessarily embarrass and humiliate him throughout life. The verdict of the jury is not excessive, based upon the actual pecuniary loss to appellee, and, when the other elements of damage above mentioned are taken into consideration, it is quite clear that the verdict of the jury was not excessive.

For these reasons, I am unable to concur with my associates in the reduction of the judgment. I therefore dissent from the judgment in this regard.