TEXAS & N. O. R. CO. v. OZUNA et al.

No. 12638.

Court of Civil Appeals of Texas.

San Antonio.

March 10, 1954.

Rehearing Denied April 7, 1954.

Keys, Russell, Keys & Watson, Corpus Christi, W. B. Moss, Sinton, for appellant.

Pichinson & Utter, Kirkham & Graham, Corpus Christi, for appellees.

NORVELL, Justice.

Judgment upon jury findings was rendered against Texas and New Orleans Railroad Company in favor of Frank Ozuna, a minor (hereinafter sometimes referred to as appellee), for the sum of $18,400, and in favor of Guadalupe Ozuna, his mother (hereinafer referred to by name) for the sum of $3,000, as and for medical and hospital expenses.

For a statement of appellant's primary contentions, we paraphrase the subject index of the brief, as it is a proper model for the profession and clearly indicates the arguments advanced to support the point presented:

The court erred in overruling appellant's motion for judgment non obstante veredicto, as

1. Appellee did not establish that his injuries were caused by appellant.

2. Appellee's injuries were proximately caused by his negligence.

3. Appellee did not establish any primary negligence on part of appellant.

4. Appellee failed to establish a case of discovered peril.

Appellant also urges alternatively that the jury's findings against it upon issues of primary negligence and "discovered peril" are against the overwhelming preponderance of the evidence.

This case is unusual, in that while it is undisputed that both of Frank Ozuna's legs were severed below the knee, it is seriously urged that there is no evidence supporting the theory that appellant's train was the cause of such injuries. According to Frank Ozuna, he left a restaurant, known as the Steak House, located in Sinton, Texas, about 1 o'clock in the morning of December 3, 1950, and started upon his way home. During the course of his journey, he crossed appellant's tracks and thereafter some one, whom he has no recollection of seeing and cannot now identify, struck him across the head with a hard object of some type, rendering him unconscious. He located the place where he was attacked as being in the vicinity of the Missouri Pacific and Southern Pacific (T. & N. O.) tracks, but testified that he remembered nothing after he was struck until he regained consciousness in a hospital. Appellant's engineer testified that as his train was running in a westerly direction in the vicinity of a right angle crossing of the Missouri Pacific and Southern Pacific tracks located in Sinton, Texas, he observed an object about 150 to 200 feet in front of the train, but that it did not appear to be a human being. However, as the locomotive approached and the object passed from his sight some portion thereof looked to him like the buttocks of a boy. He stopped the train and Frank Ozuna was found upon the tracks with his feet severed from the remainder of the body. The place where Ozuna was found was fifteen to twenty feet beyond or west of the Missouri-Pacific tracks. Apparently the stumps of Ozuna's severed legs were not bleeding to any considerable extent, as it was not necessary to apply tourniquets thereto. It is suggested that the pinching action of wheels upon the legs might account for this circumstance. The severed feet were never located, nor does it appear that any search was made therefor, but the boy was taken to the hospital in an unconscious or semiconscious state.

The jury, by its answers, effectually found that appellant's train had severed Ozuna's feet and the question is whether or not there is any evidence to support this finding. Appellant urges that the conclusion that its train severed appellee's legs can only be supported by piling presumption upon presumption, and that it is equally as reasonable to suppose that appellee's legs were severed by a Missouri-Pacific train and his body thereafter placed upon the Southern Pacific tracks. We are

referred to such cases as Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Davis v. Castile, Tex.Com.App., 257 S.W. 870; Paris & M. P. R. Co. v. Russell, Tex.Civ.App., 104 S.W.2d 650, and Miller & Miller Motor Freight Lines v. Hunt, Tex.Civ.App., 242 S.W.2d 919, all of which, by the use of varying terminology, support the proposition that a jury finding cannot rest upon mere surmise, speculation or conjecture. With that rule we have no disagreement, but here there is more than mere conjecture. The accident was admittedly unusual, as was appellee's account of the events which preceded the same. There are, however, these undisputed facts: Appellee's legs were severed. His body was found upon appellant's tracks. The locomotive and some fifteen to twenty box cars passed over appellee's body. Appellant's engineer saw an object upon the track ahead of him. As it passed from his sight, he thought some part of the object looked like the buttocks of a boy. This resulted in the train's being stopped and the discovery of appellee upon the track. Under these circumstances the field of conjecture and surmise is not invaded by concluding that appellant's train had run over appellee and severed his legs. Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723; Bock v. Fellman Dry Goods Co., Tex.Com. App., 212 S.W. 635; Cobb v. Texas & N. O. R. Co., Tex.Civ.App., 107 S.W.2d 670.

The jury found that the operators of appellant's train were guilty of primary negligence in failing to keep a proper lookout, and also found against appellant upon the issues submitted in accordance with the doctrine of discovered peril. The jury likewise found that appellee was not guilty of contributory negligence. Findings establishing liability because of the failure to keep a proper lookout are not necessarily in conflict with findings establishing liability under the doctrine of discovered peril. Northern Texas Traction Co. v. Weed, Tex. Com.App., 300 S.W. 41. They are not conflicting in this case. Often substantially the same evidence will establish either that a train operative failed to keep a proper lookout or that he discovered the perilous position of an injured party in time to have stopped the train by the use of the means at his disposal. It has been repeatedly held that the fact of discovery of peril may be proved by circumstantial evidence, and one of the elements of such proof is the ability to have seen the injured party in time to prevent injury. However, theoretically at least, a stronger showing is necessary to establish to the satisfaction of the trier of facts that a person was actually discovered in a position of peril than to show that one had ample opportunity to discover the peril of the injured party. In Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378, 379, a discovered peril case, the Supreme Court said that, " * * * while such issues (relating to discovered peril) may be raised by circumstantial evidence, still the evidence must go further than merely to establish that the employees should have discovered the peril of the deceased or that they were negligent in failing to do so."

While a large part of the briefs is occupied by discussions of the evidence with reference to the doctrine of discovered peril, the findings relating to that doctrine would at most, if supported by the evidence, supply an additional reason for affirming the judgment, if the findings on asserted contributory negligence on the part of Ozuna and the failure to maintain a proper lookout by appellant's employees are valid and have support in the evidence.

We regard the jury's failure to find Ozuna guilty of contributory negligence as binding upon this Court. Appellant cites cases in which it has been held that a person wrongfully upon the tracks of the railroad company is guilty of negligence as a matter of law, "unless there be some circumstance which intervenes to neutralize his negligence as a contributing cause of the injury." Gulf, Colorado & Santa Fe Ry. Co. v. Russell, 125 Tex. 443, 82 S.W.2d 948, 951.

There is some dispute as to whether Ozuna had crossed over the railroad tracks upon a path commonly used for that pur-

pose, i. e., whether he was a licensee or a trespasser. This point is not deemed material because, according to Ozuna's testimony, he had crossed over the tracks and was not upon the tracks or a place where he might be injured by passing trains, when he received a blow upon the head. The purport of his testimony, with the reasonable inferences drawn therefrom, was that he was placed upon the track by some person or agency beyond his control while he was in an unconscious state. The jury were entitled to credit Ozuna's testimony and it successfully "neutralized" any inference of negligence that might be raised by the presence of appellee's body upon the tracks. Houston & T. C. Ry. Co. v. Sympkins, 54 Tex. 615; St. Louis, S. F. and T. Ry. Co. v. West, Tex.Civ.App., 174 S.W. 287; Houston Belt & Terminal Ry. v. Lee, Tex. Civ.App., 185 S.W. 393; Kirby Lumber Co. v. Boyett, Tex.Civ.App., 221 S.W. 669; Gulf, Colorado & S. F. Ry. Co. v. Snow, Tex.Civ.App., 146 S.W.2d 1040; Jara v. Thompson, Trustee, Tex.Civ.App., 223 S.W. 2d 941.

We are also of the opinion that the evidence supports the jury's findings on failure to maintain a proper lookout. The train, consisting of seventeen loaded freight cars and twenty-six empties, was traveling at a rate of fifteen miles per hour immediately prior to the collision. Upon the night he was injured, Ozuna was wearing dark-colored clothes and evidently was lying for the most part between the rails upon a light brown roadbed. M. V. Schorp, the engineer, testified that he saw an object (evidently Ozuna) lying in the middle of the track 150 or 200 feet away. However, he did not recognize the object as a human being, although, as it passed from his sight, he thought it might possibly be such. He further testified that a moving person could be recognized as a human being for a distance of approximately a quarter of a mile. His estimate of the distance a standing individual could be recognized as such was 150 or 200 feet away. He testified that the train, made up of the freight cars above described and traveling about fifteen miles per hour, could be stopped in an emergency in a distance of 100 to 200 feet.

W. O. Deason, a retired locomotive engineer, testified that the vision of an engineer on a locomotive equipped with a headlight, such as that involved here, would be approximately 450 feet, and that a human being lying between the rails could be recognized as such at a distance of 300 feet. His estimate of the emergency stopping distance of a train made up as was that of appellant and traveling about fifteen miles per hour was 150 feet.

B. L. Guess testified as a lighting expert. He apparently had had no actual experience with locomotive headlights gained from riding in the cab and looking down the track. He, however, had been educated as an electrical engineer and made a study of various lamps and equipment for securing better lighting. He testified that the standard steam locomotive headlight (and there is nothing in the record to indicate that the headlight here involved was not standard) was a 250 watt lamp producing a beam of 500,000 candle power capable of "picking up" objects on the track 800 feet ahead. In his opinion, an engineman should be able to discern a body dressed in dark clothes, as was Ozuna, as being that of a human being at a distance of 700 feet.

It may be that Guess' testimony was not as convincing as it might have been had he possessed some actual experience in the use of a headlight from a cab, but this did not render his testimony inadmissible. Lancaster v. Cox, Tex.Civ.App., 274 S.W. 200; Montgomery Ward & Co. v. Levy, Tex.Civ.App., 136 S.W.2d 663; 19 Tex.Jur., 135, Expert and Opinion Evidence, § 92.

We have stated the testimony of the witness Guess and that of the retired engineer, Deason, in the light most favorable to the prevailing party below, as we are required to do upon a review of this nature. It is our opinion that the jury

were within their proper prerogative in considering such evidence and arriving at the conclusion that appellant's employees did not maintain a proper lookout. There is evidence which if credited would support the theory that had such lookout been maintained, the enginemen would have recognized Ozuna as a human being in time to have stopped the train and avoided injury to him. Gulf, Colorado & Santa Fe Ry. Co. v. Russell, 125 Tex. 443, 82 S.W.2d.948; Jara v. Thompson, Trustee, Tex.Civ.App., 223 S.W.2d 941.

■ We need not discuss at length the theory of recovery based upon the doctrine of discovered peril other than to say that in our opinion the evidence, the material parts of which have heretofore been indicated, is sufficient to support a recovery upon the theory mentioned. 35 Tex.Jur. 689, Railroads, § 433; 44 Am.Jur. 708, Railroads, § 472.

We are likewise of the opinion that the findings of the jury are not against the overwhelming preponderance of the evidence and appellant's points so asserting are overruled.

■ The judgment of the court below awarded to Frank Ozuna certain damages for loss of earnings during his minority, and this action is complained of by appellant. It appears that this suit was originally filed by Julian Ozuna, both individually and as next friend of his son, Frank Ozuna. Upon the death of the father, Guadalupe Ozuna, the mother, was substituted in such capacities as a party plaintiff. When the case was submitted to the jury, the damages issues were so worded as to allow the minor rather than the mother to recover for loss of earnings during minority. No objection to this form of submission or the rendition of a judgment for the minor upon the jury's findings was made by Guadalupe Ozuna, the mother. In fact, the mother and the son were represented by the same attorneys and made

common cause against the appellant. Loss of earnings during minority is admittedly a proper item of damage. The only legitimate concern of the railroad company upon being found liable therefor is that no double recovery be allowed. In our opinion, the judgment rendered operates as a complete bar and estoppel against a subsequent assertion of claim on the part of Guadalupe Ozuna. She was a party to the suit and acquiesced in the recovery of these items of damage by her minor son and cannot thereafter assert a claim thereto in an individual capacity. In the case of Schaff v. Sanders, Tex.Com.App., 269 S.W. 1034, the Commission of Appeals quoted with approval from Moline Timber Co; v. Taylor, 144 Ark. 317, 222 S.W. 371, 373, wherein complaint was made of an instruction which permitted a minor to recover for the loss of time resulting from his injuries on the ground that the father was entitled to such earnings. The Supreme Court of Arkansas said, "the father brought this action as next friend of his son, and the instruction complained of directed the jury to assess compensation for any loss of time or diminished earning capacity from the date of the injury, and the father would be and is thereby estopped from claiming anything on account of appellee's services."

Appellant cites Tyrrell Hardware Co. v. Orgeron, Tex.Civ.App., 289 S.W. 1040, as supporting a contrary position. If there be a conflict of decision, it is our opinion that Schaff v. Sanders states the better rule and should be followed. Other cases are cited by appellant in which it appeared that the next friend was not the parent and hence not entitled to the earnings of the minor. Such cases are obviously not in point.

We are further of the opinion that no reversible error was committed by the trial court in admitting or excluding evidence.

All of appellant's points have been considered. None of them disclose a reversible error and the judgment appealed from is accordingly affirmed.